# FLINT *v.* STONE TRACY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE DISTRICT OF VERMONT.

# VAN DERHOEFF *v.* CONEY ISLAND AND BROOKLYN RAILROAD COMPANY.

# HINE *v.* HOME LIFE INSURANCE COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF NEW YORK.

# SMITH *v.* NORTHERN TRUST COMPANY.

# MINER *v.* CORN EXCHANGE NATIONAL BANK.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ILLINOIS.

# CEDAR STREET COMPANY *v.* PARK REALTY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF NEW YORK.

# JARED *v.* AMERICAN MULTIGRAPH COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO.

# GAY *v.* BALTIC MINING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE DISTRICT OF MASSACHUSETTS.

BRUNDAGE *v.* BROADWAY REALTY COMPANY.

LACROIX *v.* MOTOR TAXIMETER CAB COMPANY.

LYMAN *v.* INTERBOROUGH RAPID TRANSIT COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

PHILLIPS *v.* FIFTY ASSOCIATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

MITCHELL *v.* CLARK IRON COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

FLUHRER *v.* NEW YORK LIFE INSURANCE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

COOK *b.* BOSTON WHARF COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Nos. 407, 409, 410, 411, 412, 415, 420, 425, 431, 432, 442, 443, 446, 456, 457. Argued March 17, 18, 1910; restored to docket for reargument May 31, 1910; reargued January 17, 18, 19, 1911.—Decided March 13, 1911.

The Corporation Tax, as imposed by Congress in the Tariff Act of 1909, is not a direct tax but an excise; it does not fall within the apportionment clause of the Constitution, but is within, and complies with, the provision for uniformity throughout the United States; it is an excise on the privilege of doing business in a corporate capacity

, and as such is within the power of Congress to impose; franchises of corporations are not governmental agencies of the State and the tax is not invalid as an attempt to tax state governmental instrumentalities; not being direct taxation, but an excise, the tax is properly measured by the entire income of the parties subject to it notwithstanding a part of such income may be derived from non-taxable property; the tax does not take property without due process of law nor is it arbitrarily unequal in its operation either by differences in corporations or by reason of the classes exempted; the method of its enforcement is within the power of Congress and all corporations, not specially exempted by the act itself, carrying on any business, are subject to the provisions of the law.

The substitution of a tax on incomes of corporations for a tax on inheritance in a bill for raising revenue is an amendment germane to the subject-matter and not beyond the power of the Senate to propose under § 7, Art. I, of the Constitution, providing that such bills shall originate in the House of Representatives but that the Senate may propose or concur in amendments as in other bills. The corporation tax provision of the Tariff Act of 1909 is not unconstitutional as being a revenue measure not originating in the House of Representatives under § 7, Art. I, of the Constitution; but so held without holding that the journals of the House or Senate may be examined to invalidate an act which has been passed and signed by the presiding officers of both branches of Congress, approved by the President and deposited with the State Department.

A tax, such as the Corporation Tax imposed by the Tariff Act of 1909, on corporations, joint stock companies, associations organized for profit and having a capital stock represented by shares, and insurance companies, and measured by the income thereof, is not a tax on franchises of those paying it, but a tax upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint stock organization of the character described in the act.

Joint stock companies and associations share many benefits of corporate organization and are properly classified with corporations in a tax measure such as the Corporation Tax. *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397.

While the legislature cannot by a declaration change the real nature of a tax it imposes, its declaration is entitled to weight in construing the statute and determining what the actual nature of the tax is.

The Corporation Tax is not a direct tax within the enumeration provision of the Constitution, but is an impost or excise which Congress

has power to impose under Art. I, § 8, cl. 1, of the Constitution. *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; 158 U. S. 601, distinguished.

Indirect taxation includes a tax on business done in a corporate capacity; the difference between it and direct taxation imposed on property because of its ownership is substantial and not merely nominal.

Excises are taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations and upon corporate privileges; the requirement to pay such taxes involves the exercise of the privilege and if business is not done in the manner described no tax is payable.

The only limitations on the power of Congress to levy excise taxes are that they must be for the public welfare and must be uniform throughout the United States; they do not have to be apportioned.

Courts may not add any limitations on the power of Congress to impose excise taxes to that of uniformity, which was deemed sufficient by those who framed and adopted the Constitution.

The revenues of the United States must be obtained from the same territory, and the same people, and its excise taxes collected from the same activities, as are also reached by the States to support their local governments; and this fact must be considered in determining whether there are any implied limitations on the Federal power to tax because of the sovereignty of the States over matters within their exclusive jurisdiction.

Enactments of Congress levying taxes are, as are other laws of the Federal Government acting within constitutional authority, the supreme law of the land.

Business activities such as those enumerated in the Corporation Tax Law are not beyond the excise taxing power of Congress because executed under franchises created by the States.

The power of Congress to raise revenue is essential to national existence and cannot be impaired or limited by individuals incorporating and acting under state authority. The mere fact that business is transacted pursuant to state authority creating private corporations does not exempt it from the power of Congress to levy excise laws upon the privilege of so doing.

The exemption from Federal taxation of the means and instrumentalities employed in carrying on the governmental operations of the States does not extend to state agencies and instrumentalities used for carrying on business of a private character. *South Carolina* v. *United States*, 199 U. S. 437.

The constitutional limitation of uniformity in excise taxes does not require equal application of the tax to all coming within its operation, but is limited to geographical uniformity throughout the United States. *Knowlton* v. *Moore*, 178 U. S. 41.

Even if the principles of the equal protection provision of the Fourteenth Amendment were applicable there is no such arbitrary and unreasonable classification of business activities enumerated in and subject to the Corporation Tax Law as would render that law invalid. There is a sufficiently substantial difference between business as carried on in the manner specified in the act and as carried on by partnerships and individuals to justify the classification.

There are distinct advantages in carrying on business in the manner specified in the Corporation Tax Law over carrying it on by partnerships or individuals, and it is this privilege which is the subject of the tax and not the mere buying, selling or handling of goods.

While a direct tax may be void if it reaches non-taxable property, the measure of an excise tax on privilege may be the income from all property, although part of it may be from that which is non-taxable; and the Corporation Tax is not invalid because it is levied on total income including that derived from municipal bonds and other non-taxable property.

The measurement of the Corporation Tax by net income is not beyond the power of Congress as arbitrary and baseless. Selection of the measure and objects of taxation devolve upon Congress and not on the courts; it is not the function of the latter to inquire into the reasonableness of the excise either as to amount or property on which it is to be imposed.

Congress has power to impose the Corporation Tax and the act is not void as lacking in due process of law under the Fifth Amendment.

Although the power to tax is the power to destroy, *McCulloch* v. *Maryland*, 4 Wheat. 316, the courts cannot prevent its lawful exercise because of the fear that it may lead to disastrous results. The remedy is with the people by the election of their representatives.

Business is a comprehensive term and embraces everything about which a person can be employed; and corporations engaged in such activities as leasing and managing property, collecting rents, making investments for profit and leasing taxicabs, are engaged in business within the meaning of the Corporation Tax Law.

It is no part of the essential governmental function of a State to provide means of transportation and to supply artificial light, water and the like; and although the people of the State may derive a benefit therefrom, the public service companies carrying on such enterprises

are private, and are subject to legitimate Federal taxation, such as the Corporation Tax the same as other corporations are.

Congress has the right to select the objects of excise taxation, and this includes the right to make exemptions; exceptions in the Corporation Tax Law of labor, agricultural, religious and certain other organizations, do not invalidate the tax or render the law unconstitutional.

Courts cannot substitute their judgment for that of the legislature; where details as to estimating the amount of an excise tax, such as the deductions for interest on bonded and other indebtedness provided by the Corporation Tax Law, are not purely arbitrary, they do not invalidate the tax.

If an excise tax operates equally on the subject-matter wherever found its geographical uniformity is not affected by the fact that it may produce unequal results in different parts of the Union.

Corporations, acting as trustees or guardians under the authority of laws of a State and compensated by the interests served and not by the State, are not agents of the state government in a sense that exempts them from the operations of Federal taxation.

If it is within the power of Congress to impose the tax, it is also within its power to enact effectual means to collect the tax. *McCulloch* v. *Maryland*, 4 Wheat. 316, 421.

The unreasonable search and seizure provision of the Fourth Amendment does not prevent the Federal Government from requiring ordinary and reasonable tax returns such as those required by the Corporation Tax Law.

This court will not pass on questions of constitutionality of a statute until they arise, and no question is now presented as to whether the provisions of the Corporation Tax Law offend the self-incrimination provisions of the Fifth Amendment or whether the penalties for non-compliance are so high as to violate the Constitution; the penalty provisions of the act are separable and their constitutionality can be determined if a proper case arises.

No case is presented on this record involving the question of lack of power to tax foreign corporations doing local business in a State, or whether, if the tax on foreign corporation is unconstitutional, it would invalidate the tax on domestic corporations as working an inequality against the latter; nor is any case presented involving the invalidity of the act as a tax on exports.

THE facts, which involve the constitutional validity of the Corporation Tax Law, being section 38, of the

Payne-Aldrich Tariff Act of August 5, 1909, are stated in the opinion.

*Mr. Maxwell Evarts,* with whom *Mr. Henry S. Wardner* and *Mr. John G. Sargent,* Attorney General of the State of Vermont, were on the brief, for appellant in No. 407:

The Corporation Tax Law, so far as it affects the defendant corporation, is unconstitutional because it invades the sovereignty of the States.

The tax and the other burdens of the Corporation Tax Law fall upon the corporate franchise of the defendant corporation. See President's message, June 16, 1909, declaring that it is an excise tax upon the privilege of doing business as an artificial entity and of freedom from a general partnership liability enjoyed by those who own the stock. 44 Cong. Rec. 3344; and speech of Senator Newlands, *Id.* 3757, and the several amendments and speeches thereon, *Id.* 3836, 3935, 4024.

Senator Root placed the corporation tax on the same plane as the tax on the privilege of dealing on boards of exchange, citing *Nicol* v. *Ames,* 173 U. S. 509; 44 Cong. Rec. 4005, but see pp. 4025, 4029. The leading lawyers of both parties in the Senate admitted that the tax was understood to be a tax on the privilege or franchise of acting in a corporate capacity.

No opportunity for a hearing was given to the corporations by any committee of the Senate or House of Representatives and no novel revenue measure ever passed through Congress with less scrutiny of its constitutionality. See *Veazie Bank* v. *Fenno,* 8 Wall. 533, 44 Cong. Rec. 4032, 4036; *Id.* 3977, 3978.

Individuals or copartnerships, though carrying on the same character of business, being exempt, corporations are taxed not on account of the character of their business but on account of their being corporations.

As to what constitutes a corporate franchise see *Home*

*Insurance Co.* v. *New York*, 134 U. S. 594, 599; *Hall* v. *Sullivan Railroad Co.*, 11 Fed. Cas. 257; *Memphis Railroad Co.* v. *Commissioners*, 112 U. S. 609; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305, 312.

This law, therefore, is a burden upon the right to be a corporation. *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 429, dissent of Fuller, Ch. J., p. 581; and of Brown, J., p. 691.

Until 1870 no Federal tax had been checked by this court on the ground that it invaded the sovereignty of a State; but long before that it did declare that a state tax had invaded the sovereignty of the United States. In *McCulloch* v. *Maryland*, 4 Wheat. 316, this court held that an instrumentality of government could not be taxed in respect to its operation by one of the States. See also *Osborn* v. *United States Bank*, 9 Wheat. 738, 859.

A state tax so far as it invades the constitutional powers and sovereignty of the United States is void and a Federal tax so far as it invades the reserved powers and sovereignty of the States is equally void. *Weston* v. *Charleston*, 2 Pet. 449; *Bank of Commerce* v. *New York City*, 2 Black, 620; *Dobbins* v. *Erie County*, 16 Pet. 435.

As to impropriety of taxation of state instrumentalities, see expressions of this court in *Worcester* v. *Georgia*, 6 Pet. 515, 570; *Ableman* v. *Booth*, 21 How. 506; *License Tax Cases*, 5 Wall. 462, 470; *Pervear* v. *The Commonwealth*, 5 Wall. 475; *Collector* v. *Day*, 11 Wall. 113, affirming 3 Cliff. 376; *Railroad Co.* v. *Peniston*, 18 Wall. 5, 30; *United States* v. *Railroad Co.*, 17 Wall. 322, 327.

As to exemption of municipal bonds from Federal taxation, see *Mercantile Bank* v. *New York*, 121 U. S. 138, 162; *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 429, 583, 601–652; *Plummer* v. *Coler*, 178 U. S. 115. For other cases preventing invasion of sovereignty through taxation, see *Van Brocklin* v. *Tennessee*, 117 U. S. 151; *Ambrosini* v. *United States*, 187 U. S. 1; *Bettman* v. *Warwick*, 108 Fed. Rep. 46.

States cannot tax United States patents. *Patterson* v. *Kentucky*, 97 U. S. 501; *Webber* v. *Virginia*, 103 U. S. 344; *Allen* v. *Riley*, 203 U. S. 347; *Re Sheffield*, 64 Fed. Rep. 833; *Commonwealth* v. *Westinghouse Mfg. Co.*, 151 Pa. St. 265; *Edison Co.* v. *Board of Assessors*, 156 N. Y. 417.

A patent is a franchise. *Bloomer* v. *McQuewan*, 14 How. 539, 549; *Seymour* v. *Osborne*, 11 Wall. 516; *Patterson* v. *Kentucky*, 97 U. S. 501, 506. A State cannot tax a Federal corporate franchise. *California* v. *Cent. Pac. R. R. Co.*, 127 U. S. 1; *Cent. Pac. R. R. Co.* v. *California*, 162 U. S. 91.

Taxation of a state corporate franchise is beyond the power of Congress. The granting of charters and franchises to corporations is a prerogative of the crown; as such, it is owned by the States. *Wheeler* v. *Smith*, 9 How. 55, 78. In *Veazie Bank* v. *Fenno*, 8 Wall. 533, the tax was not on the franchise; the statute there under discussion may be sustained on the strength of the Government's power to regulate currency. See *Head Money Cases*, 112 U. S. 580.

If § 122 of the Internal Revenue Act of 1864, as amended in 1866, affords a precedent for the corporation tax of 1909, *Railroad Co.* v. *Collector*, 100 U. S. 595, does not sustain the corporation tax nor does *United States* v. *Railroad Co.*, 17 Wall. 322; or *Nicol* v. *Ames*, 173 U. S. 509.

The transmission of property on the occasion of the owner's death, being an inevitable occurrence, can be taxed to any extent by the United States without preventing the transmission. On the other hand, corporate franchises are government creations; they may easily be taxed to extinction, and the granting of franchises may easily be prevented by the mere enactment of a tax statute.

There is a clear distinction between a Federal tax on the doing of a thing with or in respect to property which the State did not create, and a Federal tax on a corporate

franchise created and granted out of state sovereignty. *Thomas* v. *United States*, 192 U. S. 363; *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, do not support the constitutionality of the corporation tax. The latter case sustained § 27 of the War Revenue Act as an excise tax on a particular business and was in line with *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433. The Corporation Tax Law mentions no particular business except insurance. *South Carolina* v. *United States*, 199 U. S. 437, does not apply. The tax was laid on the dispensaries not because they were empowered by the State, but because they dealt in liquors. The Corporation Tax Law falls upon corporations because they are empowered by the State and not because they do a general business.

Until the enactment of the Corporation Tax Law no such tax had been imposed by Congress. In 122 years of legislation under the Constitution the corporation tax of 1909 is the first of its kind. *Hale* v. *Henkel*, 201 U. S. 43, 86.

The burdens of the Corporation Tax Law fall on the franchise of every corporation. The law therefore puts the burden on the power of the States to create corporations, and mere phraseology counts for little as against the substance and effect when the constitutionality of the law is attacked. *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 429, 580; *Knowlton* v. *Moore*, 178 U. S. 41, 81; *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 411.

The plain language of the Tenth Amendment to the Constitution is not to be evaded by a device which clothes an invasion of state sovereignty in a new name.

Among the "ordinary functions" of state government is the creation of corporations, and the exercise of a prerogative of sovereignty in creating them is strictly governmental. The invasion of state sovereignty through the corporation tax is actual and real.

The operation of the law would result in confiscation

instead of taxation. "For taking away our charters" was one of the grievances of the American colonies against the King of Great Britain.

The corporations are deprived of their property without due process of law.

No justification for this tax is to be derived from any analogy to state corporation taxes. The relation of the States to corporations is different from the relation of the Federal Government to state corporations. A State grants a corporate charter, and it may impose on that charter such conditions, whether in the form of taxes or otherwise, as it sees fit.

Congress, in classifying corporations as the objects of a special corporation tax, assumes that apart from the reasons why a State may so classify them, there is some other basis for classification. There is none, however, and every feature of business peculiar to corporations is an incident inherent in the franchise granted and exempt from Federal taxation. *Kansas Pac. R. R. Co.* v. *Atchison, Topeka & Santa Fe R. R. Co.*, 112 U. S. 414; *McKinley* v. *Wheeler*, 130 U. S. 630.

For Congress to classify corporations as the objects of a special and discriminating tax, whether the burdens are light, oppressive or wholly confiscatory, is utterly arbitrary. *San Bernardino County* v. *Southern Pac. R. R. Co.*, 118 U. S. 417.

Due process of law is a process which accords with those immutable principles of justice which inhere in the very idea of free government. *Holden* v. *Hardy*, 169 U. S. 366, 389; *Leeper* v. *Texas*, 139 U. S. 462, 468; *Columbia Bank* v. *Okely*, 4 Wheat. 235, 244; *Twining* v. *New Jersey*, 211 U. S. 78, 101.

Congress must conform to these principles in the passage of every law. *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272; *Sinking Fund Cases*, 99 U. S. 700, 718.

The arbitrary action of Congress in placing these unprecedented and oppressive burdens on the defendant corporations and wholly exempting their business competitor from every one of them is not due process of law. *Ballard v. Hunter*, 204 U. S. 241; *Magoun v. Illinois Trust Co.*, 170 U. S. 283; *Duncan v. Missouri*, 152 U. S. 377; *Gulf, Colorado & Santa Fe Ry. Co. v. Ellis*, 165 U. S. 150.

It is of no importance that the Fifth Amendment to the Constitution contains no specific clause as to the equal protection of the laws. Congress cannot from such omission claim the right to enact laws which are unjust, unequal, oppressive and arbitrary.

The Fourteenth Amendment is but declaratory of the law as it had long existed. See Historical Remarks on Taxation of Free States, 1778, p. 39; *Chicago, B. & Q. R. R. Co. v. Chicago*, 166 U. S. 226, 241; *Cotting v. Kansas City Stock Yards*, 183 U. S. 79; *Connolly v. Union Sewer Pipe Co.*, 184 U. S. 540.

The corporation tax declares a discrimination "clear and hostile" upon companies which owe the General Government no allegiance and no debt for their creation. It is a discrimination "unusual" to the extent of being without a precedent in the history of the country and is therefore wholly "unknown." It does not proceed within reasonable limits for in the reason of things there is no basis for the discrimination; and as for being within "general usage," the fact that it was hitherto unknown condemns it upon that ground. *American Sugar Refining Co. v. Louisiana*, 179 U. S. 89, 92; *Billings v. Illinois*, 188 U. S. 97, 101; *Southern Ry. Co. v. Greene*, 216 U. S. 400.

The act is unconstitutional because it takes property for public use without just compensation, not only as to the one per cent tax, but also as to the peculiar requirement of subd. 6 of the law, which says that the returns "shall constitute public records and be open to inspection as such."

This publicity is not required for the purpose of imposing the tax. It can in no way enhance the public revenues. It is arbitrary, visitatorial and disciplinary in its nature. It is not, in any sense, for revenue purposes. A corporation is protected under the Fifth Amendment against the taking of its property without just compensation. *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312; *Hale* v. *Henkel*, 201 U. S. 43, 76.

The corporation tax is a direct tax on the franchise and therefore unconstitutional because not apportioned. *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 429; *S. C.*, 158 U. S. 601; *Nicol* v. *Ames*, 173 U. S. 509, 520; *California* v. *Cent. Pac. R. R. Co.*, 127 U. S. 1, 41. It is in the nature of a poll tax. Beale on Foreign Corp., § 508, p. 665; *Lumberville Delaware Bridge Co.* v. *Assessors*, 55 N. J. Law, 529, 537.

Any tax when placed on the right of the man or of the corporation to live is a capitation tax and as direct as any tax can be.

The inclusion of joint stock companies within the terms of the statute does not affect the argument on the previous points. *Liverpool* v. *Massachusetts*, 10 Wall. 566; *Attorney General* v. *Mercantile Marine Ins. Co.*, 121 Massachusetts, 524; *Platt* v. *Wemple*, 117 N. Y. 136.

*Mr. Richard V. Lindabury,* with whom *Mr Charles W. Pierson* and *Mr. Robert Lynn Cox* were on the brief, for appellants in Nos. 409 and 410:

The tax is not an excise tax upon business or occupation, but is either a corporate franchise tax, or an income tax; it is imposed only on artificial persons; it is measured by a percentage of net income, not from business carried on, but from all sources. No kind or kinds of business are specified but the tax extends to income from business of exporting, and to income from business done outside the jurisdiction. The nature of the tax does not depend on what Congress has seen fit to label it.

If the tax be construed as a franchise tax, it constitutes, so far as state corporations are concerned, an interference with sovereign powers and functions of the States not surrendered to the General Government and expressly reserved to the States by the Tenth Amendment.

The fact that the tax is laid on joint stock companies as well as on corporations does not necessarily indicate that it is not a franchise tax.

The right to grant corporate charters for ordinary business purposes is an attribute of sovereignty belonging to the States, not to the General Government. As to implied limitations on Federal power of taxation, see *California* v. *Cent. Pac. R. R. Co.*, 127 U. S. 1.

The true test is found in the nature of the function performed by the State in chartering the corporation, not in the nature of the function performed by the corporation after it is chartered; as to this see taxation of patent rights and copyrights; as to the general limitations of taxing power, see *Railroad Co.* v. *Collector*, 100 U. S. 595; *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433; *Veazie Bank* v. *Fenno*, 8 Wall. 533; *Knowlton* v. *Moore*, 178 U. S. 41. *South Carolina* v. *United States*, 199 U. S. 437, discussed and distinguished.

The tax is an attempted encroachment by Congress on a new field; it cannot be sustained as a tax on franchises as property. The claim of a right in Congress to tax franchises of state corporations is dangerous and the practical consequences if such a claim be upheld will be serious.

If the tax be construed as an income tax it is unconstitutional because imposed upon income from real estate and personal property, and therefore a direct tax not apportioned among the States according to population; also because imposed upon income from state and municipal securities and therefore a burden on the borrowing power of the States. As these are essential and inseparable parts of the taxing scheme, the tax must fall as a whole.

The tax is non-uniform, arbitrary and unequal, and if imposed and enforced would deprive the corporations and joint stock associations against which it is levied of their property without due process of law contrary to the provisions of the Fifth Amendment of the Constitution.

The classification is arbitrary because limited to artificial persons; and because some corporations such as fraternal benefit societies and domestic building and loan associations are exempted.

The apportionment is arbitrary because the tax is not limited to income from business done; and as between corporations whose indebtedness does and does not exceed amount of their paid capital stock; also as between domestic corporations doing business abroad and foreign corporations.

Whatever view may be taken of the act in its other aspects, it must be held unconstitutional, so far as it imposes a tax on the franchises or business of state railroads or other public service corporations, because an interference with state agencies or instrumentalities.

The fact that insurance companies are specifically mentioned does not differentiate them from the other corporations subject to the tax.

*Mr. John G. Johnson* and *Mr. Frederic Jesup Stimson,* with whom *Mr. Lawrence M. Stockton* and *Mr. Harris Livermore* were on the brief, for appellants in Nos. 425 and 457:

It was not within the power of the States before the Fourteenth Amendment to deprive citizens of the equal protection of the laws. *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150, 155.

The words "due process of law" in the Fifth Amendment have therefore the full meaning and intention more amply expressed in the Fourteenth Amendment by the addition of the words "equal protection of the laws."

For comparison of these phrases, see Stimson's Fed. and State Const. pp. 75, 80, 90; Taswell-Langmead, English Const. Hist., 6th ed., quoting Coke, 104–107; 2 Hannis Taylor, Eng. Const. p 3.

Words in the Federal Constitution are to be construed and extended according to their full historical meaning acquired at the time of its adoption. Cooley, Const. Law, 4th ed., p. 387; *Mattox* v. *United States*, 156 U. S. 237; *Kepner* v. *United States*, 195 U. S. 100.

Unequal taxation, not based upon a reasonable classification, is not "due process of law," and an excise tax imposed on the doing of business (save where imposed as a charter limitation by the sovereignty creating a corporation), like a simple property tax must apply alike to all persons and all corporations engaged in the same business. A franchise tax may be imposed in lieu of or in addition to a simple property tax, but where the tax is not imposed upon the charter to do business as a corporation as such, it must apply equally to corporations and individuals.

*Mr. Richard Reid Rogers* for appellants in No. 442:

The act of Congress is unconstitutional with especial respect to the Interborough Rapid Transit Company, inasmuch as it imposes a tax upon a public agency engaged in carrying on a municipal, and therefore, under the decisions of this court, a state enterprise.

A railroad chartered by the Congress of the United States, employed to transport the mails of the United States, or its troops and munitions of war, and engaged in conducting broadly an interstate commerce business, notwithstanding the fact that its existence is due to private initiation, and its profits are distributed to private investors, is nevertheless an agency of the Federal Government, so that its right to exist and carry on its work cannot be taxed by any state government.

A municipality is but the arm of a state government;

a municipal undertaking is a public undertaking of the State itself, and, therefore, municipal property and municipal agencies enjoy the same protection from Federal taxation as the property and agencies of the State of which the municipality is a mere subdivision. *People ex rel. Interborough R. T. Co.* v. *Tax Commissioners,* 126 App. Div. 610.

The public agencies of a State, or of a municipality of a State, may not be taxed by the Federal Government. *Veazie Bank* v. *Fenno,* 8 Wall. 533, 547; *The Collector* v. *Day,* 11 Wall. 113, 125; *United States* v. *Railroad Co.,* 17 Wall. 322; *United States* v. *Louisville,* 169 U. S. 249; *Mercantile Bank* v. *New York,* 121 U. S. 138; *Pollock* v. *Farmers' L. & T. Co.,* 157 U. S. 429, 584; *Van Allen* v. *The Assessors,* 3 Wall. 573, 591; *Luxton* v. *North River Bridge Co.,* 153 U. S. 525, 529; *United States* v. *Stanford,* 161 U. S. 412; *United States* v. *Union Pacific R. R. Co.,* 91 U. S. 92; *Railroad Co.* v. *Peniston,* 18 Wall. 30; *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 162; *Fagan* v. *Chicago,* 84 Illinois, 227, 233, 234; *Knowlton* v. *Moore,* 178 U. S. 41, 59; *Ambrosini* v. *United States,* 187 U. S. 1, 7; *United States* v. *Railroad Co.,* 17 Wall. 322, 330; *United States* v. *Louisville,* 169 U. S. 249.

The act of Congress is unconstitutional in so far as it attempts to impose a tax upon the franchises of foreign corporations, or at least upon their right to carry on a purely intrastate business—a matter over which the Federal Government has no control. The whole act, therefore, must fail, inasmuch as it cannot be assumed that Congress intended to pass a law which would place state corporations at a disadvantage with respect to foreign corporations engaged in the same character of business. *License Tax Cases,* 5 Wall. 462, 471; *Covington &c. Bridge Co.* v. *Kentucky,* 154 U. S. 204, 210.

The tax is so unequal that by definition it is not such an act as Congress has the delegated power to impose.

Mr. *Julien T. Davies*, with whom Mr. *Frederic D. Mc-Kenney* was on the brief, for appellant in No. 415:

The tax imposed by the Corporation Tax Law is a direct tax upon income from real estate and personal property, and not being apportioned among the several States is unconstitutional.

If the tax is not upon net income, it is a tax upon the franchise to be a corporation, and as such, void, because in conflict with the implied limitations upon the taxing power contained in the Constitution.

The Corporation Tax Law, if the tax falls upon "carrying on or doing business," must fail for want of equality and uniformity in the tax thereby imposed.

The provisions of the Corporation Tax Law with regard to the making of returns and constituting such returns public records are unconstitutional as requiring an unreasonable search.

The power of Congress to raise revenue for the support of the General Government, that is, its power of taxation, and the power of Congress to regulate commerce with foreign nations and among the several States, are both derived from the same articles of the Constitution of the United States. In their origin, they are equal and coordinate powers. The power to regulate commerce is, however, exclusive of the power to tax concurrent with the powers of the several States.

The right of all persons, as well as corporations, to engage in interstate commerce is a constitutional right and one which cannot be taken away or prohibited, although it can be regulated by Congress.

The corporation tax is unconstitutional; as to corporations engaged in interstate commerce it is clearly a tax on the doing of the business of interstate commerce, as it exceeds regulation.

To engage in interstate commerce is a constitutional right and not a privilege; therefore Congress cannot pro-

hibit the exercise of such right. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Reid* v. *Colorado*, 187 U. S. 137; *Howard* v. *Illinois Cent. R. R. Co.*, 207 U. S. 463; *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Company* v. *Kansas*, 216 U. S. 56; *Paul* v. *Virginia*, 8 Wall. 168.

There is a distinction between the power to regulate commerce between the States and the power to regulate commerce with foreign nations and with Indian tribes. *Int. Comm. Comm.* v. *Brimson*, 154 U. S. 447; *Buttfield* v. *Stranahan*, 192 U. S. 470; *United States* v. *Williams*, 194 U. S. 279; *United States* v. *Ju Toy*, 198 U. S. 253; *Oceanic Nav. Co.* v. *Stranahan*, 214 U. S. 320.

Taxation is not included within the power of regulation granted by the Constitution. The power to tax is the power to destroy or prohibit. If interstate commerce can be taxed at all, it can be taxed out of existence and thus prohibited. *McCray* v. *United States*, 195 U. S. 27. The power to regulate does not include the power to prohibit. *Miller* v. *Jones*, 80 Alabama, 89; *Bronson* v. *Oberlin* (O.), 52 Am. Rep. 90; *Ex parte Patterson* (Tex.), 51 L. R. A. 654; *Duckall* v. *New Albany*, 25 Indiana, 283; *McConvill* v. *Jersey City*, 39 N. J. Law, 38; *People* v. *Codway*, 28 N. W. Rep. 101; *Mernaugh* v. *Orlando*, 41 Florida, 433; *In re Hanck* (Mich.), 38 N. W. Rep. 275; *State* v. *DeBar*, 58 Missouri, 395; *Sweet* v. *Wabash*, 41 Indiana, 7; *Andrews* v. *State* (Tenn.), 8 Am. Rep. 8; *Ex parte Byrd* (Ala.), 4 So. Rep. 397; *Muhlenbrinck* v. *Long Branch Comrs.*, 42 N. J. Law, 364.

*Mr. Edward Osgood Brown*, with whom *Mr. George Packard* and *Mr. Vincent J. Walsh* were on the brief, submitted for appellants in Nos. 411 and 412:

While as held in *Knowlton* v. *Moore*, Congress may tax even though it involves the power to destroy some business or property right of a citizen or corporation, it

has not the power to tax and thus destroy the right of existence of a corporation. Such a power would be tantamount to a power to tax the right to create such an existence. *California* v. *Central Pac. R. R. Co.*, 127 U. S. 1; *Collector* v. *Day*, 11 Wall. 113; *Van Brocklin* v. *Tennessee*, 117 U. S. 151, 178. *Knowlton* v. *Moore* and *Veazie Bank* v. *Fenno*, 8 Wall. 533, hold nothing to the contrary.

Whatever may be said of other corporations, public service corporations in private hands furnishing transportation, water, light, or performing other public or semi-public functions, are instrumentalities of the State in the strictest sense and for that reason are given the power of eminent domain; the functions of many of them are indeed governmental, *e. g.*, the functions of water companies. *Water Co.* v. *Fergus*, 180 U. S. 624; *Water Co.* v. *Freeport*, 180 U. S. 587; *Water Co.* v. *Danville City*, 180 U. S. 619.

The inclusion of these public service corporations is a part of the intent under which the law was passed as an "entire scheme of taxation," and if it fails as to them it must fail as a whole—under the holding in the *Pollock case*.

Under the allegations of our bill the Corporation Tax Law is an invalid and unenforceable enactment as against the defendant corporation in this case—The Northern Trust Company—because it is shown by those allegations that said company is in an especial manner an agency of the legislative and judicial departments of the government of Illinois, and in its case, therefore, the corporation tax is in a peculiar and especial sense an attempted unconstitutional interference with an instrumentality of the State of Illinois in the discharge of its functions and powers.

The Corporation Tax Law if invalid against the great mass of corporations intended to be affected by it, cannot be held valid as to national banks and other corporations.

created by Federal authority. A tax falling only on such corporations was not within the intention of Congress. If it fails as to state-created corporations, therefore, it must fail as to national banks. *Pollock* v. *Trust Co.*, 158 U. S. 601; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Spraigue* v. *Thomson*, 118 U. S. 90; *Warren* v. *Charlestown*, 2 Gray, 84.

*Mr. Charles H. Tyler, Mr. Owen D. Young, Mr. Burton E. Eames* and *Mr. Randolph Frothingham* for appellant, in No. 443, submitted:

The defendant corporation is not within the statute, as it applies only to such corporations as are carrying on or doing business.

The defendant corporation is not carrying on or doing business.

The care and attention which is given by an owner to his property as incidental merely to the protection and preservation of his investment, does not constitute carrying on or doing business within the meaning of this act. *Parker Mills* v. *Commissioners of Taxes*, 23 N. Y. 242; *Re Ala. & Chat. R. R. Co.*, 9 Blatchf. 390.

The present act is to be interpreted not by giving the broadest possible interpretation to the words, "carrying on or doing business" because that would lead to results at once unreasonable and unconstitutional.

The carrying on or doing business is not to be applied to every activity of a corporation; and the courts have restricted the application of the words to the principal or primary pursuit or occupation of the company and have not extended it to matters purely incidental. See Marshall, Principles of Economics, 348 (London, 1891).

*Mr. C. H. Williams* for appellants in No. 457.

*Mr. J. B. Foraker*, with whom *Mr. Alton C. Dustin*,

*Mr. D. Edward Morgan* and *Mr. Richard Inglis* were on the brief, for appellant in No. 420.

*Mr. Frederic R. Coudert* for appellants in Nos. 431 and 432, submitted.

*Mr. Jed. L. Washburn*, with whom *Mr. William D. Bailey* and *Mr. Oscar Mitchell* were on the brief, for appellant in No. 446.

*Mr. William D. Guthrie*, with whom *Mr. Victor Morawetz* and *Mr. Howard Van Sinderen* were on the brief, for appellee in No. 410:

The argument in support of the contention of this appellee may be divided as follows for convenience of discussion:

A tax upon income derived from the carrying on or doing business is an excise and not a direct tax within the meaning of the Constitution.

Congress cannot constitutionally impose an excise tax measured by non-taxable income.

The act of August 5, 1909, should be construed as imposing an excise tax only upon income derived from the carrying on or doing business.

The act of August 5, 1909, is not severable.

A tax upon the carrying on or doing business or upon the net income derived from the carrying on or doing business is an excise and not a direct tax within the meaning of the Constitution. *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433, 443; *Railroad Co.* v. *Collector*, 100 U. S. 595, 598; *Springer* v. *United States*, 102 U. S. 586, 598; *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 411; *South Carolina* v. *United States*, 199 U. S. 437, 454.

The constitutional provision that all excises shall be uniform throughout the United States merely requires

geographical uniformity. *Knowlton* v. *Moore,* 178 U. S. 41.

Congress may not tax United States bonds and particularly those issued under the acts of July 14, 1870, 16 Stat. 272, and January 14, 1875, 18 Stat. 296. Although the Constitution does not expressly prohibit the United States from impairing the obligation of contracts, the due process clause of the Fifth Amendment prevents any such impairment or destruction of contract rights. *Sinking Fund Cases,* 99 U. S. 700, 718; *United States* v. *Union Pacific Ry. Co.,* 160 U. S. 1, 33. Nor can such income be indirectly taxed by means of a so-called special excise tax upon the carrying on or doing of business by corporations. *Pollock* v. *Farmers' L. & T. Co.,* 157 U. S. 429.

The constitutional provisions conferring upon Congress power to impose taxes make no distinction between corporations and individuals. Indeed, corporations are not mentioned in the Constitution. The power to tax private corporations organized under state laws is coextensive with the power to tax individuals and flows from exactly the same constitutional provisions as apply to individuals. Therefore, Congress cannot impose upon corporations, or upon companies or associations of any class, an excise tax that it cannot impose upon corporations and other companies or associations.

The mere franchise or license to be a corporation or to carry on business in corporate form certainly does not of itself make a corporation a governmental instrumentality or agency. *Railroad Co.* v. *Peniston,* 18 Wall. 5, 31; *South Carolina Case, supra,* 199 U. S. 437.

The classification of corporations as a separate class by the States has been sustained on grounds which are, at least partly, unavailable in support of an act of Congress. *The Delaware Railroad Tax,* 18 Wall. 206; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237; *Home Ins. Co.* v. *New York,* 134 U. S. 594, 606; *New York* v. *Roberts,* 171

U. S. 658, 665; *Florida Central &c. R. R. Co.* v. *Reynolds*, 183 U. S. 471, 477; *Berea College* v. *Kentucky*, 211 U. S. 45, 54.

Congress, however, cannot constitutionally impose an excise tax measured by non-taxable income.

It is submitted that the underlying principle of these decisions is that a license or occupation tax cannot be imposed by a State upon foreign corporations, measured by the amount of non-taxable property or the amount of non-taxable interstate business of the corporation, and that any such attempt would establish an unconstitutional basis of classification for purposes of taxation; in other words, that a tax cannot be measured by non-taxable property or income. If we apply the same principle to the case at bar, it must follow that Congress cannot directly or indirectly measure an excise tax on corporations or individuals by property or income which is not taxable at all or only taxable by a direct and apportioned tax. *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 410, 417; *Galveston, Harrisburg &c. Ry. Co.* v. *State of Texas*, 210 U. S. 217; *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400, 416; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 519; *Louisville &c. Ferry Co.* v. *Kentucky*, 188 U. S. 385, 398; *State Tonnage Tax Cases*, 12 Wall. 204, 217.

The corporation tax should be construed as imposing an excise tax only upon income derived from the carrying on or doing business. If an act of Congress be reasonably susceptible of a construction that will avoid a conflict with the Constitution of the United States, such construction should be adopted. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 407.

The act is susceptible of a construction which may render the act constitutional and avoid the grave and doubtful constitutional questions involved in the contention of the Government or suggested in the numerous

briefs filed on behalf of the various appellants. According to this construction, as the act purports to impose "a special excise with respect to the carrying on or doing business," the tax is to be assessed upon net income received "from all sources" in carrying on or doing business, but is not to be assessed upon income derived directly from United States, state, county or municipal securities, or from real and personal property not used or employed in business. Thus construed, the act imposes an excise tax upon business or occupation and not in any respect a direct tax on property or on non-taxable securities, and thereby any conflict with express or implied constitutional limitations is avoided.

Congress has acted upon the decisions of this court in the Income Tax Cases, and has proposed for adoption by the several States a Sixteenth Article of Amendment to the Constitution, to read as follows. "Article 16. The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States and without regard to any census or enumeration."

The Corporation Tax Law is subject to the implied constitutional limitation that bonds issued by the Federal and state governments are not taxable directly or indirectly by Congress. *Kepner* v. *United States*, 195 U. S. 100, 125; *United States* v. *Nix*, 189 U. S. 199, 205. The test in each case should be whether the income had been received as direct income from property or as income from carrying on business. *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 417.

The court will undoubtedly take judicial notice that the Sixteenth Amendment was proposed in connection with the passage of the Tariff Law of 1909. A number of senators and representatives were insisting upon inserting in that tariff law an income tax similar to the tax contained in the act of 1894, so as thereby to force a

reconsideration of the ruling in the prior cases. It was in order to prevent any general income tax provision in the act of 1909 similar to the provision contained in the act of 1894, and in order to avoid the unseemly position of the Congress declining to accept the authoritative decision of this court, that a compromise was entered into under which it was agreed to pass a joint resolution to amend the Constitution of the United States as suggested by this court in the opinion in the *Pollock Case*, 158 U. S. 635, so as to vest in Congress power to lay direct income taxes without apportionment. It would be strange, indeed, if in view of this indisputable history, it should now be held that after all it was the deliberate intention of Congress, in and by § 38 of the act of 1909, to enact a provision which, as to corporations, joint stock associations and insurance companies, should be identical in substance and effect with the income tax provision contained in the act of August 15, 1894, and thus plainly in conflict with the ruling in the Income Tax Cases of 1895.

The separate provision taxing the income of foreign corporations derived from "capital invested within the United States" is clearly unconstitutional within the ruling in the *Pollock Case*. On such capital invested in real or personal property the tax is direct and not an excise. But, so far as we have been informed, no foreign corporation is now before the court challenging the constitutionality of the act because, as to it, the tax is partly an excise tax on business transacted and partly a direct tax on capital invested.

So also as to the taxation of such corporations as are engaged in the export business or in transacting business in foreign countries. Assuming that income derived from exporting or income derived from carrying on or doing business in foreign countries is not within the taxing power of Congress under the rules declared in such cases as *Railroad Co.* v. *Jackson,* 7 Wall. 262; *State Tax on Foreign-*

*Held Bonds,* 15 Wall. 300; *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 181; *Louisville &c. Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S. 299; *Delaware, L. &c. R. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 294; *Selliger* v. *Kentucky,* 213 U. S. 200; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, it may be ruled that it does not lie with those not so engaged to challenge the constitutionality of the act of Congress in so far as it affects other corporations not before the court.

The provision in the act of 1909 excluding income received as dividends upon stock of other corporations, etc., does not imply that no other deductions were intended by Congress. *People ex rel. Vandervoort Ry. Co.* v. *Glynn,* 194 N. Y. 387, 389.

*Mr. James L. Quackenbush* for appellees in No. 442, submitted.

*Mr. Charles A. Snow* and *Mr. Joseph H. Knight* for appellees in No. 425 submitted.

*The Solicitor General* for the United States on the reargument; *Mr. Solicitor General Bowers* on the original argument, by leave of the Court in support of the constitutionality of the Corporation Tax Law:

Appellants have presented against this tax every possible objection that could be made to any form of taxation under the Constitution.

It is said to be a tax upon exports, and void because beyond the power of Congress to lay in any manner; a direct tax and void because not apportioned among the States according to population; an excise tax and void because not uniform throughout the United States; a tax upon corporate franchises, and void as an impairment of the sovereignty of the States; a tax upon business, and

void as discriminating against corporations; not a tax at all, but a mere confiscation of private property for public use; void because in its methods of assessment and collection it involves unreasonable search and seizure and self-incrimination; and, finally, that it was not constitutionally enacted because it is a revenue measure and originated in the Senate.

The first ground of objection may be dismissed with the suggestion that none of the complainants is engaged in the business of exportation, and the last is not tenable because the bill originated in the House, and the Senate in substituting the corporation tax for another tax provided for in the original bill did no more than exercise its undoubted power of amendment.

In determining whether a tax is direct or indirect within the meaning of the Constitution, its incidence is not to be considered. The question is not an economic one, but legal, and we must look for the answer to the legislative and judicial history of the country. *Owensboro Bank* v. *Owensboro*, 173 U. S. 664; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503.

The nature of the tax is determined by its subject-matter—that upon which it is laid.

The act itself discloses this. The tax is upon the business done by the corporations.

The remainder of the act deals with the rate of the tax, its measure, exemptions, assessment, collection, etc.

Rufus King asked in the Federal Convention, "What is the precise meaning of direct taxation?" No one then answered the question. Taxes on capitation and land were, however, certainly meant. The intention even here was to tax in some measure, according to ability to pay. So slaves were to be counted as three-fifths of their real number, and the land tax was to be according to population, because land values depended largely upon density of population.

When the carriage tax was imposed in 1794 members of the Convention expressed their view of what was direct taxation.

In the administration which proposed the tax were three members of the Convention,—Washington, Hamilton and Randolph; in the House which enacted it were Baldwin, Dayton, Fitzsimmons and Madison, and in the Senate were Ellsworth, King, Morris and Martin. Of these, only Madison opposed the tax.

In the *Hylton Case*, in which the tax was challenged, of the justices participating in the decision Wilson and Paterson were members of the Federal Convention and Iredell was a member of the North Carolina Convention which ratified the Constitution.

The decision, unanimous for the tax, was acquiesced in by the country as a proper construction of the Constitution, and later Madison himself as President approved of a like tax.

The carriage tax was certainly a tax upon property, and in a sense direct, for it must be paid by the owner of the carriage on which it fell, but because it was laid not upon property generally, and only upon a peculiar species of property, it was held to be an excise. Great stress was laid by the court upon the fact that it was incapable of just apportionment according to population, as indicating that it was not such a tax as was intended to be apportioned.

During the war of 1812 and during the Civil War taxes were levied upon different species of property, upon various occupations, and upon different business pursuits of individuals and corporations, and every such tax was laid as an excise. And these could none of them be justified as war taxes, for the taxing power of the Government is the same in war and peace.

After the war some of these taxes were assailed as unconstitutional. *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433;

*Veazie Bank* v. *Fenno*, 8 Wall. 533; *Scholey* v. *Rew*, 23 Wall. 331; *Railroad Co.* v. *Collector*, 100 U. S. 595; *Springer* v. *United States*, 102 U. S. 586.

In these cases were involved a tax upon dividends, a tax upon state bank notes, a succession tax, and a general income tax. They were all assailed as direct and as void because unapportioned; but they were all sustained.

*Railroad Co.* v. *Collector, supra*, is directly in point, as the tax was upon the net income of corporations. It is criticised as not having been well considered, because the amount involved was small, but it was followed in *Railroad Co.* v. *United States*, 101 U. S. 543; *Bailey* v. *Railroad Co.*, 106 U. S. 109; *United States* v. *Erie Ry. Co.*, 106 U. S. 327; *M. & C. R. R. Co.* v. *United States*, 108 U. S. 228; *Little Miami* v. *United States*, 108 U. S. 277.

In some of these cases the amounts involved were large. A decision of this court six times made upon the same question certainly expresses its deliberate judgment.

For one hundred years, from 1794 to 1894, there was entire accord between the executive, legislative and judicial departments of the Government as to what was a direct tax; and during that time a tax upon business, however measured, was always held to be not a direct tax but an excise. It is said the *Income Tax Case*, 157 U. S. 429; *S. C.*, 158 U. S. 601, has settled a different rule.

The tax there was upon income from all sources, and by a divided court was held to be direct in so far and only in so far as it fell upon income from property. That a tax upon "gains or profits from business, privileges or employments" is an excise was distinctly recognized by the majority opinion, and every previous case bearing upon the question, except that of *Springer* v. *United States, supra*, was distinguished and in effect approved.

The cases decided by the court since deal with the *Income Tax Case* as thus limited in its scope. *Nicol* v. *Ames*, 173 U. S. 509; *Knowlton* v. *Moore*, 178 U. S. 41;

*Plummer* v. *Color,* 178 U. S. 115; *Murdock* v. *Ward,* 178
U. S. 139; *United States* v. *Perkins,* 163 U. S. 625; *Snyder*
v. *Bettman,* 190 U. S. 249; *Patton* v. *Brady,* 184 U. S. 608;
*Thomas* v. *United States,* 192 U. S. 363; *Spreckels Sugar
Refining Co.* v. *McClain,* 192 U. S. 397.

In these cases the taxes were upon sales of merchandise
on boards of trade, measured by the value of the property,
upon successions, measured by their value, upon tobacco,
upon the sale of stocks, measured by the par value of the
stocks, and upon business, measured by the income of the
business. In each of them the contention was made that
the tax was a direct tax upon property, and the *Income
Tax Case* was cited to support the contention; but in every
case the tax was held to be not upon the property but
upon the peculiar right, privilege or facility enjoyed or
used, or upon the business involved, and valid as an
excise. The cases preceding the *Income Tax Case,* saving
*Springer* v. *United States,* were again and again cited and
approved.

Every previous decision of this court, not excepting
that in the *Income Tax Case,* supports the view of the
Government that this tax upon the business of corpora-
tions is not a direct tax, and so need not be apportioned.

That the tax reaches income from all sources does not
change its nature, for that relates only to the measure of
the tax. The subject of the tax being within the power
of Congress, the measure of it is largely a matter for its
discretion. *United States* v. *Singer,* 15 Wall. 111.

Besides, the property held by a corporation, whether
actively employed in its principal business or not, does
serve as an aid to that business, adding to its financial
strength and credit. Corporations, except those purely
public, and eleemosynary institutions, are organized for
business purposes. The law does not recognize such a
thing as a corporation being "a chartered gentleman of
leisure." And it is singular that if the real estate com-

panies, which claim immunity upon the ground that they do nothing, but are simply incorporated proprietors of great business buildings, are not engaged in business, they should yet complain of the tax as discriminating against them and in favor of individual and partnership competitors. The degree of the activity of the corporation can make no difference. Doing business at all, or of any kind, the company is subject to the tax, and in every case to the same measure, that is, its entire net income determined as provided by the law.

As an excise the tax is uniform in the constitutional sense, because the same throughout the United States, and no more is required. *Knowlton* v. *Moore,* 178 U. S. 41.

The exemptions do not invalidate it. The legislature has a discretion as to these and especially where, as here, the result is to lay the tax as every tax should be—in the measure of the ability to bear it.

The tax is not upon the agencies and instrumentalities of the state governments.

Public corporations are not sought to be taxed. Corporate privileges for the conduct of business, held and used for purposes of private gain, do not clothe the possessors of them with the attributes of state sovereignty.

The Stone Tracy Co. and the firm of Tuxbury & Co., referred to in brief of appellant Flint, each conduct a general merchandise business at Windsor, Vermont.

The business in each case is private. It is no more a public function when conducted by a corporation than when conducted by a partnership. If the business of the corporation is the exercise of sovereignty it cannot be taxed even though like business conducted by individuals is taxed.

The State taxes the business and property of its private corporations and the taxing power of the Nation is as broad in scope as that of the State. *McCulloch* v. *Mary-*

*land,* 4 Wheat. 316; *Lane County* v. *Oregon,* 7 Wall. 71; *Railroad Co.* v. *Peniston,* 18 Wall. 5.

The power of the State to grant franchises is not impaired. For its grant the State may demand a price, either present payment in full, or periodical payments running through the life of the grant. So it may dispose of land or other property. In the price obtained for its grant the Nation may not share, but the franchise, when granted, or the property, when conveyed and held in private ownership, may be taxed by State and Nation as anything else of value, or having the attributes of property, may be. *Memphis &c. Co.* v. *Shelby Co.,* 109 U. S. 398; *Metropolitan &c. Ry. Co.* v. *New York Tax Commissioners,* 199 U. S. 1; *St. Louis* v. *United Railways Co.,* 210 U. S. 266.

The question here is not *how* a tax may be laid upon corporate franchises or corporate business but whether *it* may be laid at all.

The right of the Government to tax state corporations is clearly implied in *McCulloch* v. *Maryland, supra,* and is clearly asserted in *Veazie Bank* v. *Fenno, supra.* And also in *Scholey* v. *Rew; Railroad Co.* v. *Collector; Plummer* v. *Coler, supra.*

The doctrine of these and other cases which might be cited is after all nothing more than that whatever has pecuniary value—intangible as well as tangible property—is a subject of taxation.

That corporate powers and privileges have pecuniary value is attested by the continually growing extent of their use.

When the Federal Convention was in session there were but six corporations doing business in the United States.

Two hundred sixty-two thousand four hundred ninety corporations made returns under the Corporation Tax Law. They had a capital stock of $52,371,626,752, bonded and other debt of $31,333,952,696, and a net income—upon

stock—of $3,125,481,101.   If this capitalization is sub-
stantial they have absorbed the major part of the taxable
wealth of the country.

That the business of the corporation is affected with a
public interest will not exempt it from taxation.   No dis-
tinction of that sort is recognized in the adjudicated cases.

Public interest brings a business within the police
power, but does not place it beyond the taxing power of the
Government.

The policy of Government changes as to the exercise of
police power over a business.   One generation may regu-
late a business and another leave it free.   The taxing power
with respect to it remains the same.

A State may itself assume the conduct of a business, as
South Carolina has done with respect to the liquor traffic,
but that does not withdraw it from reach of the taxing
power of the Government.   *South Carolina* v. *United
States*, 199 U. S. 437.

So the business of supplying water, light, power, and
conducting transportation is just as much subject to
taxation when carried on by quasi-public corporations as
it was in earlier days when carried on in crude, simple
ways by private individuals.

If by putting upon a business the stamp of public in-
terest, a State could withdraw it from the sphere of
national taxation, the General Government might be
seriously impaired in its means of revenue.

The real question presented by the corporation tax is
that of discrimination.   Is the selection of corporations,
individuals and partnerships not being included, arbitrary
and unjust?

Government may tax one calling and leave another
free, and so it may and does select between different
species of property, and great freedom must be allowed in
this respect.   *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S.
540.

We lay an excise upon liquor and tobacco and not upon bread and meat, and there is here a purpose of discrimination, but that does not avoid the tax.  We may select the objects of taxation for various reasons, convenience of collection, relation to ability to pay, discouragement of use, or whatever other reason may commend itself to the judgment of the lawmaker.

So we discriminate between callings.  We may tax the doctor and exempt the lawyer, tax the shoemaker and leave the tailor free.  We impose an excise upon the travelling vender and exempt the merchant with a fixed place of business.  During the Civil War we differentiated peddlers into four classes, the first class being those who drove a four-horse van, and the fourth those who carried their packs upon their shoulders.  We may fix such a tax at an arbitrary sum, or we may measure it by capital, or by the volume or the profits of the business.

Then why may we not discriminate in taxation between the corporation and the individual?  The familiar illustration of the illegality of discrimination between the brown-haired and the red-haired man, the Protestant and the Catholic, is presented, but it is not to the purpose.  We hold all men to be created equal, and to stand as equals before the law.  In the differences of complexion and of creed there is nothing that has the attributes of property, nothing that makes for pecuniary gain, nothing related to the ability to bear the burdens of government.

Corporate powers and privileges are not like complexion and creed.  They do have the attributes of property, they do make for gain, they do have relation to the ability to bear the burdens of government.  And so they may be taxed as any other species of property, and a business conducted with their aid may be subjected to an excise when the same business conducted without their aid is left free.

In the methods provided for the assessment and collec-

tion of the tax there is no invasion of any constitutional right.   Under the laws of every State in the Union individuals must make returns of their possessions.   The taxgath rer may invade any household, and list its contents even to the humble utensils of the kitchen.   The exercise of the taxing power is necessarily inquisitorial as to method, and must be so long as its demands are met with resentment and evasion.   The law in that respect, and especially as amended, provides for nothing more than is reasonably necessary for the collection of the tax, and as to what is thus necessary the legislature must determine, and what it prescribes must be accepted unless it involves a clear violation of rights guaranteed by the Constitution.   That the returns may become public is no objection to the requirement of them.   The tax returns of individuals under state laws are public records and whosoever will may inspect them.   Publicity in every relation of the citizen to the Government is essential to the proper conduct of Government, and no evils may be fairly apprehended from publicity in every detail of tax assessment and collection comparable with those which would surely result from secrecy.

MR. JUSTICE DAY delivered the opinion of the court.

These cases involve the constitutional validity of § 38 of the act of Congress approved August 5, 1909, known as "The Corporation Tax" law.   36 Stat. c. 6, 11, 112–117.

It is contended in the first place that this section of the act is unconstitutional, because it is a revenue measure, and originated in the Senate in violation of § 7 of Article I of the Constitution, providing that "all bills for the raising of revenue shall originate in the House of Representatives, but the Senate may propose or concur with amendments as on other bills."   The history of the act

is contained in the Government's brief, and is accepted as correct, no objection being made to its accuracy.

This statement shows that the tariff bill, of which the section under consideration is a part, originated in the House of Representatives and was there a general bill for the collection of revenue. As originally introduced, it contained a plan of inheritance taxation. In the Senate the proposed tax was removed from the bill, and the corporation tax, in a measure, substituted therefor. The bill having properly originated in the House, we perceive no reason in the constitutional provision relied upon why it may not be amended in the Senate in the manner which it was in this case. The amendment was germane to the subject-matter of the bill and not beyond the power of the Senate to propose. In thus deciding we do not wish to be regarded as holding that the journals of the House and Senate may be examined to invalidate an act which has been passed and signed by the presiding officers of the House and Senate and approved by the President and duly deposited with the State Department. *Field* v. *Clark,* 143 U. S. 649; *Harwood* v. *Wentworth,* 162 U. S. 547; *Twin City Bank* v. *Nebeker,* 167 U. S. 196.

In order to have in mind some of the more salient features of the statute with a view to its interpretation, a part of the first paragraph is here set out, as follows (36 Stat. 11, 112, c. 6):

"Sec. 38. That every corporation, joint stock company or association organized for profit and having a capital stock represented by shares, and every insurance company now or hereafter organized under the laws of the United States or of any State or Territory of the United States or under the acts of Congress applicable to Alaska or the District of Columbia, or now or hereafter organized under the laws of any foreign country and engaged in business in any State or Territory of the United States or in Alaska or in the District of Columbia, shall be subject

to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association or insurance company equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations, joint stock companies or associations or insurance companies subject to the tax hereby imposed; or if organized under the laws of any foreign country, upon the amount of net income over and above five thousand dollars received by it from business transacted and capital invested within the United States and its Territories, Alaska and the District of Columbia, during such year, exclusive of amounts so received by it as dividends upon stock of other corporations, joint stock companies or associations or insurance companies subject to the tax hereby imposed."

A reading of this portion of the statute shows the purpose and design of Congress in its enactment and the subject-matter of its operation. It is at once apparent that its terms embrace corporations and joint stock companies or associations which are organized for profit, and have a capital stock represented by shares. Such joint stock companies, while differing somewhat from corporations, have many of their attributes and enjoy many of their privileges. To these are added insurance companies, and they, as corporations, joint stock companies or associations, must be such as are now or hereafter organized under the laws of the United States or of any State or Territory of the United States, or under the acts of Congress applicable to Alaska and the District of Columbia. Each and all of these, the statute declares, shall be subject to pay annually a special excise tax with respect to the carrying on and doing business by such corporation, joint stock company or association, or insurance company. The tax is to be equivalent to one per cent of the entire net

income over and above $5,000 received by such corporation or company *from all sources* during the year, excluding, however, amounts received by them as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax imposed by the statute. Similar companies organized under the laws of any foreign country and engaged in business in any State or Territory of the United States, or in Alaska or the District of Columbia, are required to pay the tax upon the net income over and above $5,000 received by them from business transacted and capital invested within the United States, the Territories, Alaska and the District of Columbia, during each year, with the like exclusion as to amounts received by them as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax imposed.

While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the lawmaking power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company. It is therefore apparent, giving all the words of the statute effect, that the tax is imposed not upon the franchises of the corporation irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof, in a sum equivalent to one per centum upon the entire net income over and above $5,000 received from all sources during the year; that is, when imposed in this manner it is a tax upon the doing of business with the advantages which inhere in the pecul-

VOL. CCXX—10

iarities of corporate or joint stock organizations of the character described. As the latter organizations share many benefits of corporate organization it may be described generally as a tax upon the doing of business in a corporate capacity. In the case of the insurance companies the tax is imposed upon the transaction of such business by companies organized under the laws of the United States or any State or Territory, as heretofore stated.

This tax, it is expressly stated, is to be equivalent to one per centum of the entire net income over and above $5,000 received from *all sources* during the year—this is the measure of the tax explicitly adopted by the statute. The income is not limited to such as is received from property used in the business, strictly speaking, but is expressly declared to be upon the entire net income above $5,000 from all sources, excluding the amounts received as dividends on stock in other corporations, joint stock companies or associations, or insurance companies also subject to the tax. In other words, the tax is imposed upon the doing of business of the character described, and the measure of the tax is to be the income, with the deduction stated, received not only from property used in business, but from every source. This view of the measure of the tax is strengthened when we note that as to organizations under the laws of foreign countries the amount of net income over and above $5,000 includes that received from business transacted and capital invested in the United States, the Territories, Alaska and the District of Columbia.

It is further strengthened when the subsequent sections are considered as to deductions in ascertaining net income and requiring returns from those subject to the act. Under the second paragraph the net income is to be ascertained by certain deductions from the gross amount of income received within the year "from all sources;" and the return to be made to the collector of internal revenue

under the third section is required to show the gross amount of the income received during the year "from all sources." The evident purpose is to secure a return of the entire income, with certain allowances and deductions which do not suggest a restriction to income derived from property actively engaged in the business. This interpretation of the act, as resting upon the doing of business, is sustained by the reasoning in *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397, in which a special tax measured by the gross receipts of the business of refining oil and sugar was sustained as an excise in respect to the carrying on or doing of such business.

Having thus interpreted the statute in conformity, as we believe, with the intention of Congress in passing it, we proceed to consider whether, as thus construed, the statute is constitutional.

It is contended that it is not, certainly so far as the tax is measured by the income of bonds non-taxable under Federal statutes, and of municipal and state bonds beyond the Federal power of taxation. And so of real and personal estates, because as to such estates the tax is direct, and required to be apportioned according to population among the States. It is insisted that such must be the holding unless this court is prepared to reverse the income tax cases decided under the act of 1894. *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429; *S. C.,* 158 U. S. 601.

The applicable provisions of the Constitution of the United States in this connection are found in Art. I, § 8, cl. 1, and in Art. I, § 2, cl. 3, and Art. I, § 9, cl. 4. They are respectively:

"The Congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States."

"Representatives and direct taxes shall be apportioned among the several States which may be included within this Union, according to their respective numbers."

"No capitation or other direct tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken."

It was under the latter requirement as to apportionment of direct taxes according to population that this court in the *Pollock Case* held the statute of 1894 to be unconstitutional. Upon the rehearing of the case Mr. Chief Justice Fuller, who spoke for the court, summarizing the effect of the decision, said:

"We have considered the act only in respect of the tax on income derived from real estate, and from invested personal property, and have not commented on so much of it as bears on gains or profits from business, privileges, or employments, in view of the instances in which taxation on business, privileges, or employments has assumed the guise of an excise tax and been sustained as such." 158 U. S. 635.

And as to excise taxes, the Chief Justice said:

"We do not mean to say that an act laying by apportionment a direct tax on all real estate or personal property, or the income thereof, might not also lay excise taxes on business, privileges, employments and vocations (p. 637)."

The *Pollock Case* was before this court in *Knowlton* v. *Moore*, 178 U. S. 41, 80. In that case this court sustained an excise tax upon the transmission of property by inheritance. It was contended there, as here, that the case was ruled by the *Pollock Case*, and of that case this court, speaking by the present Chief Justice, said:

"The issue presented in the *Pollock Case* was whether an income tax was direct within the meaning of the Constitution. The contentions which the case involved were thus presented. On the one hand, it was argued that only

capitation taxes and taxes on land as such were direct, within the meaning of the Constitution, considered as a matter of first impression, and that previous adjudications had construed the Constitution as having that import. On the other hand, it was asserted that, in principle, direct taxes, in the constitutional sense, embraced not only taxes on land and capitation taxes, but all burdens laid on real or personal property because of its ownership, which were equivalent to a direct tax on such property, and it was affirmed that the previous adjudications of this court had settled nothing to the contrary.

\*          \*          \*          \*          \*          \*          \*          \*

"Undoubtedly, in the course of the opinion in the *Pollock Case* it was said that if a tax was direct within the constitutional sense the mere erroneous qualification of it as an excise or duty would not take it out of the constitutional requirement as to apportionment.  But this language related to the subject-matter under consideration, and was but a statement that a tax which was in itself direct, *because imposed upon property solely by reason of its ownership,* could not be changed by affixing to it the qualifications of excise or duty.  Here we are asked to decide that a tax is a direct tax on property which has at all times been considered as the antithesis of such a tax; that is, has ever been treated as a duty or excise, because of the particular occasion which gives rise to its levy.

\*          \*          \*          \*          \*          \*          \*          \*

"Considering that the constitutional rule of apportionment had its origin in the purpose to prevent taxes on persons *solely because of their general ownership of property* from being levied by any other rule than that of apportionment, two things were decided by the court: First, that no sound distinction existed between a tax levied on a person solely because of his general ownership of real property, and the same tax imposed solely because of his general ownership of personal property.  Secondly, that the

tax on the income derived from such property, real or personal, was the legal equivalent of a direct tax on the property from which said income was derived, and hence must be apportioned. These conclusions, however, lend no support to the contention that it was decided that duties, imposts and excises, which are not the essential equivalent of a tax on property generally, real or personal, solely because of its ownership, must be converted into direct taxes, because it is conceived that it would be demonstrated by a close analysis that they could not be shifted from the person upon whom they first fall."

The same view was taken of the *Pollock Case* in the subsequent case of *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397.

The act now under consideration does not impose direct taxation upon property solely because of its ownership, but the tax is within the class which Congress is authorized to lay and collect under Art. I, § 8, cl. 1 of the Constitution, and described generally as taxes, duties, imposts and excises, upon which the limitation is that they shall be uniform throughout the United States.

Within the category of indirect taxation, as we shall have further occasion to show, is embraced a tax upon business done in a corporate capacity, which is the subject-matter of the tax imposed in the act under consideration. The *Pollock Case* construed the tax there levied as direct, because it was imposed upon property simply because of its ownership. In the present case the tax is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed. The difference between the acts is not merely nominal, but rests upon substantial differences between the mere ownership of property and the actual doing of business in a certain way.

It is unnecessary to enter upon an extended consideration of the technical meaning of the term "excise." It has

been the subject-matter of considerable discussion—the terms duties, imposts and excises are generally treated as embracing the indirect forms of taxation contemplated by the Constitution. As Mr. Chief Justice Fuller said in the *Pollock Case,* 157 U. S. 557:

"Although there have been from time to time intimations that there might be some tax which was not a direct tax nor included under the words 'duties, imposts and excises,' such a tax for more than one hundred years of national existence has as yet remained undiscovered, notwithstanding the stress of particular circumstances has invited thorough investigation into sources of revenue."

And in the same connection the late Chief Justice, delivering the opinion of the court in *Thomas* v. *United States,* 192 U. S. 363, in speaking of the words duties, imposts and excises, said:

"We think that they were used comprehensively to cover customs and excise duties imposed on importation, consumption, manufacture and sale of certain commodities, privileges, particular business transactions, vocations, occupations and the like."

Duties and imposts are terms commonly applied to levies made by governments on the importation or exportation of commodities. Excises are "taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges." Cooley, Const. Lim., 7th ed., 680.

The tax under consideration, as we have construed the statute, may be described as an excise upon the particular privilege of doing business in a corporate capacity, *i. e.,* with the advantages which arise from corporate or quasi-corporate organization; or, when applied to insurance companies, for doing the business of such companies. As was said in the *Thomas Case,* 192 U. S. 363 *supra,* the requirement to pay such taxes involves the exercise of

privileges, and the element of absolute and unavoidable demand is lacking. If business is not done in the manner described in the statute, no tax is payable.

If we are correct in holding that this is an excise tax, there is nothing in the Constitution requiring such taxes to be apportioned according to population. *Pacific Ins. Co.* v. *Soule,* 7 Wall. 433; *Springer* v. *United States,* 102 U. S. 586; *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397.

It is next contended that the attempted taxation is void because it levies a tax upon the exclusive right of a State to grant corporate franchises, because it taxes franchises which are the creation of the State in its sovereign right and authority. This proposition is rested upon the implied limitation upon the powers of National and state governments to take action which encroaches upon or cripples the exercise of the exclusive power of sovereignty in the other. It has been held in a number of cases that the State cannot tax franchises created by the United States or the agencies or corporations which are created for the purpose of carrying out governmental functions of the United States. *McCulloch* v. *Maryland,* 4 Wheat. 316; *Osborn* v. *Bank,* 9 Wheat. 738; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *California* v. *Central Pac. R. R. Co.,* 127 U. S. 1.

An examination of these cases will show that in each case where the tax was held invalid the decision rested upon the proposition that the corporation was created to carry into effect powers conferred upon the Federal Government in its sovereign capacity, and the attempted taxation was an interference with the effectual exercise of such powers.

In *Osborn* v. *The Bank, supra,* a leading case upon the subject, whilst it was held that the Bank of the United States was not a private corporation, but a public one, created for national purposes, and therefore beyond the

taxing power of the State, Chief Justice Marshall, in delivering the opinion of the court, conceded that if the corporation had been originated for the management of an individual concern, with private trade and profit for its great end and principal object, it might be taxed by the State. · Said the Chief Justice (p. 359):

"If these premises [that the corporation was one of private character] were true, the conclusion drawn from them would be inevitable. This mere private corporation, engaged in its own business, with its own views, would certainly be subject to the taxing power of the State, as any individual would be; and the casual circumstance of its being employed by the Government in the transaction of its fiscal affairs would no more exempt its private business from the operation of that power than it would exempt the private business of any individual employed in the same manner."

The inquiry in this connection is: How far do the implied limitations upon the taxing power of the United States over objects which would otherwise be legitimate subjects of Federal taxation, withdraw them from the reach of the Federal Government in raising revenue, because they are pursued under franchises which are the creation of the States?

In approaching this subject we must remember that enactments levying taxes, as other laws of the Federal Government when acting within constitutional authority, are the supreme law of the land. The Constitution contains only two limitations on the right of Congress to levy excise taxes; they must be levied for the public welfare and are required to be uniform throughout the United States. As Mr. Chief Justice Chase said, speaking for the court in *License Tax Cases*, 5 Wall. 462, 471: "Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity. Thus limited and thus only, it reaches every

subject and may be exercised at discretion." The limitations to which the Chief Justice refers were the only ones imposed in the Constitution upon the taxing power.

In *McCray* v. *United States*, 195 U. S. 27, this court sustained a Federal tax on oleomargarine, artificially colored, and held that while the Fifth and Tenth Amendments qualify, so far as applicable, all the provisions of the Constitution, nothing in those Amendments operates to take away the power to tax conferred by the Constitution on the Congress. In that case it was contended that the subject taxed was within the exclusive domain of the States, and that the real purpose of Congress was not to raise revenue, but to tax out of existence a substance not harmful of itself and one which might be lawfully manufactured and sold; but, the only constitutional limitation which this court conceded, in addition to the requirement of uniformity, and that for the sake of argument only so far as concerned the case then under consideration, was that Congress is restrained from arbitrary impositions or from exceeding its powers in seeking to effect unwarranted ends. The limitation of uniformity was deemed sufficient by those who framed and adopted the Constitution. The courts may not add others. *Patton* v. *Brady*, 184 U. S. 608, 622. And see *United States* v. *Singer*, 15 Wall. 111, 121; *Nicol* v. *Ames*, 173 U. S. 509, 515.

We must therefore enter upon the inquiry as to implied limitations upon the exercise of the Federal authority to tax because of the sovereignty of the States over matters within their exclusive jurisdiction, having in view the nature and extent of the power specifically conferred upon Congress by the Constitution of the United States. We must remember, too, that the revenues of the United States must be obtained in the same territory, from the same people, and excise taxes must be collected from the same activities, as are also reached by the States in order to support their local government.

While the tax in this case, as we have construed the statute, is imposed upon the exercise of the privilege of doing business in a corporate capacity, as such business is done under authority of state franchises, it becomes necessary to consider in this connection the right of the Federal Government to tax the activities of private corporations which arise from the exercise of franchises granted by the State in creating and conferring powers upon such corporations. We think it is the result of the cases heretofore decided in this court, that such business activities, though exercised because of state-created franchises, are not beyond the taxing power of the United States. Taxes upon rights exercised under grants of state franchises were sustained by this court in *Railroad Co.* v. *Collector,* 100 U. S. 595; *United States* v. *Erie R. R. Co.,* 106 U. S. 327; *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397.

It is true that in those cases the question does not seem to have been directly made, but, in sustaining such taxation, the right of the Federal Government to reach such agencies was necessarily involved. The question was raised and decided in the case of *Veazie Bank* v. *Fenno,* 8 Wall. 533. In that well-known case a tax upon the notes of a state bank issued for circulation was sustained. Mr. Chief Justice Chase, in the course of the opinion said:

"Is it, then, a tax on a franchise granted by a State, which Congress, upon any principle exempting the reserved powers of the States from impairment by taxation, must be held to have no authority to lay and collect?

"We do not say that there may not be such a tax. It may be admitted that the reserved rights of the States, such as the right to pass laws, to give effect to laws through executive action, to administer justice through the courts, and to employ all necessary agencies for legitimate purposes of state government, are not proper subjects of the taxing power of Congress. But it cannot be admitted that

franchises granted by a State are necessarily exempt from taxation; for franchises are property, often very valuable and productive property; and when not conferred for the purpose of giving effect to some reserved power of a State, seem to be as properly objects of taxation as any other property.

"But in the case before us the object of taxation is not the franchise of the bank, but property created, or contracts made and issued under the franchise, or power to issue bank bills. A railroad company, in the exercise of its corporate franchises, issues freight receipts, bills of lading, and passenger tickets; and it cannot be doubted that the organization of railroads is quite as important to the State as the organization of banks. But it will hardly be questioned that these contracts of the company are objects of taxation within the powers of Congress, and not exempted by any relation to the State which granted the charter of the railroad. And it seems difficult to distinguish the taxation of notes issued for circulation from the taxation of these railroad contracts. Both descriptions of contracts are means of profit to the corporations which issue them; and both, as we think, may properly be made contributory to the public revenue." (pp. 547, 548).

It is true that the decision in the *Veazie Bank Case* was also placed, in a measure, upon the authority of the United States to control the circulating medium of the country, but the force of the reasoning, which we have quoted, has not been denied or departed from.

In *Thomas* v. *United States*, 192 U. S. 363, a Federal tax on the transfer of corporate shares in state corporations was upheld as a tax upon business transacted in the exercise of privileges afforded by the state laws in respect to corporations.

In *Nicol* v. *Ames*, 173 U. S. 509, a Federal tax was sustained upon the enjoyment of privileges afforded by a board of trade incorporated by the State of Illinois.

When the Constitution was framed the right to lay excise taxes was broadly conferred upon the Congress. At that time very few corporations existed. If the mere fact of state incorporation, extending now to nearly all branches of trade and industry, could withdraw the legitimate objects of Federal taxation from the exercise of the power conferred, the result would be to exclude the National Government from many objects upon which indirect taxes could be constitutionally imposed. Let it be supposed that a group of individuals, as partners, were carrying on a business upon which Congress concluded to lay an excise tax. If it be true that the forming of a state corporation would defeat this purpose, by taking the necessary steps required by the state law to create a corporation and carrying on the business under rights granted by a state statute, the Federal tax would become invalid and that source of national revenue be destroyed, except as to the business in the hands of individuals or partnerships. It cannot be supposed that it was intended that it should be within the power of individuals acting under state authority to thus impair and limit the exertion of authority which may be essential to national existence.

In this connection *South Carolina* v. *United States*, 199 U. S. 437, 461, is important. In that case it was held that the agents of the state government, carrying on the business of selling liquor under state authority, were liable to pay the internal revenue tax imposed by the Federal Government. In the opinion previous cases in this court were reviewed, and the rule to be deduced therefrom stated to be that the exemption of state agencies and instrumentalities from national taxation was limited to those of a strictly governmental character, and did not extend to those used by the State in carrying on business of a private character.

The cases unite in exempting from Federal taxation the means and instrumentalities employed in carrying on the

governmental operations of the State. The exercise of such rights as the establishment of a judiciary, the employment of officers to administer and execute the laws and similar governmental functions cannot be taxed by the Federal Government. *The Collector* v. *Day*, 11 Wall. 113; *United States* v. *Railroad Co.*, 17 Wall. 322; *Ambrosini* v. *United States*, 187 U. S. 1.

But this limitation has never been extended to the exclusion of the activities of a merely private business from the Federal taxing power, although the power to exercise them is derived from an act of incorporation by one of the States. We, therefore, reach the conclusion that the mere fact that the business taxed is done in pursuance of authority granted by a State in the creation of private corporations does not exempt it from the exercise of Federal authority to levy excise taxes upon such privileges.

But, it is insisted, this taxation is so unequal and arbitrary in the fact that it taxes a business when carried on by a corporation and exempts a similar business when carried on by a partnership or private individual as to place it beyond the authority conferred upon Congress. As we have seen, the only limitation upon the authority conferred is uniformity in laying the tax, and uniformity does not require the equal application of the tax to all persons or corporations who may come within its operation, but is limited to geographical uniformity throughout the United States. This subject was fully discussed and set at rest in *Knowlton* v. *Moore*, 178 U. S. 41, *supra*, and we can add nothing to the discussion contained in that case.

In levying excise taxes the most ample authority has been recognized from the beginning to select some and omit other possible subjects of taxation, to select one calling and omit another, to tax one class of property and to forbear to tax another. For examples of such taxation see

cases in the margin, decided in this court, upholding the power.[1]

Many instances might be given where this court has sustained the right of a State to select subjects of taxation, although as to them the Fourteenth Amendment imposes a limitation upon state legislatures, requiring that no per-

---

[1] *Hylton* v. *United States*, 3 Dall. 171 (a tax on carriages which the owner kept for private use); *Nicol* v. *Ames*, 173 U. S. 509 (a tax upon sales or exchanges of boards of trade); *Knowlton* v. *Moore*, 178 U. S. 41 (a tax on the transmission of property from the dead to the living); *Treat* v. *White*, 181 U. S. 264 (a tax on agreements to sell shares of stock, denominated "calls" by stockbrokers); *Patton* v. *Brady*, 184 U. S. 608 (a tax on tobacco manufactured for consumption, and imposed at a period intermediate the commencement of manufacture and the final consumption of the article); *Cornell* v. *Coyne*, 192 U. S. 418 (a tax on "filled cheese" manufactured expressly for export); *McCray* v. *United States*, 195 U. S. 27 (a tax on oleomargarine not artificially colored, a higher tax on oleomargarine artificially colored, and no tax on butter artificially colored); *Thomas* v. *United States*, 192 U. S. 363 (a tax on sales of shares of stock in corporations); *Pacific Insurance Co.* v. *Soule*, 7 Wall. 433 (a tax upon the amounts insured, renewed, or continued by insurance companies upon the gross amounts of premiums received and assessments made by them, and also upon dividends, undistributed sums, and incomes); *Veazie Bank* v. *Fenno*, 8 Wall. 533 (a tax of ten per centum on the amount of the notes paid out of any state bank, or state banking association); *Scholey* v. *Rew*, 23 Wall. 331 (a tax on devolutions of title to real estate); *Spreckels Sugar Refining Company* v. *McClain*, 192 U. S. 397 (a tax on the gross receipts of corporations and companies, in excess of $250,000, engaged in refining sugar or oil); *Railroad Co.* v. *Collector*, 100 U. S. 595 (a tax laid in terms upon the amounts paid by certain public service corporations as interest on their funded debt, or as dividends to their stockholders, and also on "all profits, incomes or gains of such company, and all profits of such company carried to the account of any fund, or used for construction." Held to be a tax upon the company's earnings and therefore essentially an excise upon the business of the corporations); *Springer* v. *United States*, 102 U. S. 586 (a duty provided by the internal revenue acts to be assessed, collected, and paid upon gains, profits, and incomes, held to be an excise or duty and not a direct tax).

son shall be denied the equal protection of the laws. See some of them noted in the margin.[1]

In *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, dealing with the Fourteenth Amendment, which in this respect imposes limitations only on state authority, this court said:

"The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not

---

[1] *Beers* v. *Glynn,* 211 U. S. 477 (a state tax on personalty of non-resident decedents who owned realty in the State); *Hatch* v. *Reardon,* 204 U. S. 152 (a state tax on the transfers of stock made within the State); *Armour Packing Company* v. *Lacy,* 200 U. S. 226 (a state license tax on meat packing houses. A foreign corporation selling its products in the State, but whose packing establishments are not situated in the State, is not exempt from such license tax); *Savannah, Thunderbolt & Isle of Hope Railway* v. *Savannah,* 198 U. S. 392 (a classification which distinguishes between an ordinary street railway and a steam railroad, making an extra charge for local deliveries of freight brought over its road from outside the city, held, not to be such a classification as to make the tax void under the Fourteenth Amendment); *Cook* v. *Marshall County,* 196 U. S. 261 (a state tax on cigarette dealers); *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283 (upholding the graded inheritance tax law of Illinois); *Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 U. S. 232 (state tax upon the nominal face value of bonds, instead of their actual value, held a valid part of the state system of taxation).

allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the State in framing their Constitution."

It is insisted in some of the briefs assailing the validity of this tax that these cases have been modified by *Southern R. R. Co.* v. *Greene*, 216 U. S. 400. In that case a corporation organized in a State, other than Alabama, came into that State in compliance with its laws, paid the license tax and property tax imposed upon other corporations doing business in the State, and acquired under direct sanction of the laws of the State a large amount of property therein, and, when it was attempted to subject it to a further tax on the ground that it was for the privilege of doing business as a foreign corporation, when the same tax was not imposed upon state corporations doing precisely the same business, in the same way, it was held that the attempted taxation was merely arbitrary classification, and void under the Fourteenth Amendment. In that case the foreign corporation was doing business under the sanction of the state laws no less than the local corporation; it had acquired its property under sanction of those laws; it had paid all direct and indirect taxes levied against it, and there was no practical distinction between it and a state corporation doing the same business in the same way.

In the case at bar we have already discussed the limitations which the Constitution imposes upon the right to levy excise taxes, and it could not be said, even if the principles of the Fourteenth Amendment were applicable to the present case, that there is no substantial difference between the carrying on of business by the corporations taxed, and the same business when conducted by a private firm or individual. The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corpo-

rations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals. These advantages are obvious, and have led to the formation of such companies in nearly all branches of trade. The continuity of the business, without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships. It is this distinctive privilege which is the subject of taxation, not the mere buying or selling or handling of goods which may be the same, whether done by corporations or individuals.

It is further contended that some of the corporations, notably insurance companies, have large investments in municipal bonds and other non-taxable securities, and in real estate and personal property not used in the business, that therefore the selection of the measure of the income from all sources is void, because it reaches property which is not the subject of taxation—upon the authority of the *Pollock Case, supra.* But this argument confuses the measure of the tax upon the privilege, with direct taxation of the estate or thing taxed. In the *Pollock Case,* as we have seen, the tax was held unconstitutional, because it was in effect a direct tax on the property solely because of its ownership.

Nor does the adoption of this measure of the amount of the tax do violence to the rule laid down in *Galveston, Harrisburg & San Antonio Ry. Co. v. Texas,* 210 U. S. 217, nor the *Western Union Tel. Co. v. Kansas,* 216 U. S. 1. In the *Galveston Case* it was held that a tax imposed by the State of Texas, equal to one per cent upon the gross

receipts "from every source whatever" of lines of railroad lying wholly within the State, was invalid as an attempt to tax gross receipts derived from the carriage of passengers and freight in interstate commerce, which in some instances was much the larger part of the gross receipts taxed. This court held that this act was an attempt to burden commerce among the States, and the fact that it was declared to be "equal to" one per cent made no difference, as it was merely an effort to reach gross receipts by a tax not even disguised as an occupation tax, and in nowise helped by the words "equal to." In other words, the tax was held void, as its substance and manifest intent was to tax interstate commerce as such.

In the *Western Union Telegraph Case* the State undertook to levy a graded charter fee upon the entire capital stock of one hundred millions of dollars of the Western Union Telegraph Company, a foreign corporation, and engaged in commerce among the States, as a condition of doing local business within the State of Kansas. This court held, looking through forms and reaching the substance of the thing, that the tax thus imposed was in reality a tax upon the right to do interstate business within the State, and an undertaking to tax property beyond the limits of the State; that whatever the declared purpose, when reasonably interpreted, the necessary operation and effect of the act in question was to burden interstate commerce and to tax property beyond the jurisdiction of the State, and it was therefore invalid.

There is nothing in these cases contrary, as we shall have occasion to see, to the former rulings of this court which hold that where a tax is lawfully imposed upon the exercise of privileges within the taxing power of the State or Nation, the measure of such tax may be the income from the property of the corporation, although a part of such income is derived from property in itself non-taxable. The distinction lies between the attempt to tax the prop-

erty as such and to measure a legitimate tax upon the privileges involved in the use of such property.

In *Home Ins. Co.* v. *New York*, 134 U. S. 594, a tax was sustained upon the right or privilege of the Home Insurance Company to be a corporation, and to do business within the State in a corporate capacity, the tax being measured by the extent of the dividends of the corporation in the current year upon the capital stock. Although a very large amount, nearly two of three millions of capital stock was invested in bonds of the United States, expressly exempted from taxation by a statute of the United States, the tax was sustained as a mode of measurement of a privilege tax which it was within the lawful authority of the State to impose. Mr. Justice Field, who delivered the opinion of the court, reviewed the previous cases in this court, holding that the State could not tax or burden the operation of the Constitution and of laws enacted by the Congress to carry into execution the powers vested in the General Government. Yielding full assent to those cases, Mr. Justice Field said of the tax then under consideration: "It is not a tax in terms upon the capital stock of the company, nor upon any bonds of the United States composing a part of that stock. The statute designates it a tax upon the 'corporate franchise or business' of the company, and reference is only made to its capital stock and dividends for the purpose of determining the amount of the tax to be exacted each year." In that case, in the course of the opinion, previous cases of this court were cited, with approval, *Society for Savings* v. *Coite*, 6 Wall. 594; *Provident Institution* v. *Massachusetts*, 6 Wall. 611.

In the *Coite Case* a privilege tax upon the total amount of deposits in a savings bank was sustained, although $500,000 of the deposits had been invested in securities of the United States, and declared by act of Congress to be exempt from taxation by state authority. In that case the court said: "Nothing can be more certain in legal

decision than that the privileges and franchises of a private corporation, and all trades and avocations by which the citizens acquire a livelihood, may be taxed by a State for the support of the state government. Authority to that effect resides in the State independently of the Federal Government, and is wholly unaffected by the fact that the corporation or individual has or has not made investment in Federal securities." In *Provident Institution* v. *Massachusetts, supra,* a like tax was sustained.

It is therefore well settled by the decisions of this court that when the sovereign authority has exercised the right to tax a legitimate subject of taxation as an exercise of a franchise or privilege, it is no objection that the measure of taxation is found in the income produced in part from property which of itself considered is non-taxable. Applying that doctrine to this case, the measure of taxation being the income of the corporation from all sources, as that is but the measure of a privilege tax within the lawful authority of Congress to impose, it is no valid objection that this measure includes, in part at least, property which as such could not be directly taxed. See in this connection *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, as interpreted in *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217, 226.

It is contended that measurement of the tax by the net income of the corporation or company received by it from all sources is not only unequal, but so arbitrary and baseless as to fall outside of the authority of the taxing power. But is this so? Conceding the power of Congress to tax the business activities of private corporations, including, as in this case, the privilege of carrying on business in a corporate capacity, the tax must be measured by some standard, and none can be chosen which will operate with absolute justice and equality upon all corporations. Some corporations do a large business upon a small amount of capital; others with a small business may have a large

capital. A tax upon the amount of business done might operate as unequally as a measure of excise as it is alleged the measure of income from all sources does. Nor can it be justly said that investments have no real relation to the business transacted by a corporation. The possession of large assets is a business advantage of great value; it may give credit which will result in more economical business methods; it may give a standing which shall facilitate purchases; it may enable the corporation to enlarge the field of its activities and in many ways give it business standing and prestige.

It is true that in the *Spreckels Case*, 192 U. S. *supra,* the excise tax, for the privilege of doing business, was based upon the business assets in use by the company, but this was because of the express terms of the statute which thus limited the measure of the excise. The statute now under consideration bears internal evidence that its draftsman had in mind language used in the opinion in the *Spreckels Case*, and the measure of taxation, the income from all sources, was doubtless inserted to prevent the limitation of the measurement of the tax to the income from business assets alone. There is no rule which permits a court to say that the measure of a tax for the privilege of doing business, where income from property is the basis, must be limited to that derived from property which may be strictly said to be actively used in the business. Departures from that rule sustained in this court are not wanting. In *United States* v. *Singer*, 15 Wall. 111, an excise tax was sustained upon the liquor business, which was fixed by the payment on an amount not less than 80 per cent of the total capacity of the distillery. Whether such capacity was used in the business was a matter of indifference, and this court said of such a measure:

"Every one is advised in advance of the amount he will be required to pay if he enters into the business of distilling spirits, and every distiller must know the produc-

ing capacity of his distillery. If he fail under these circumstances to produce the amount for which by the law he will in any event be taxed if he undertakes to distill at all, he is not entitled to much consideration."

In *Society for Savings* v. *Coite,* 6 Wall. *supra,* and *Provident Institution* v. *Massachusetts,* 6 Wall. *supra,* as we have seen, the amount of excise was measured by the amount of bank deposits. It made no difference that the deposits were not used actively in the business.

In *Hamilton Company* v. *Massachusetts,* 6 Wall. 632, the tax was measured by the excess of the market value of the corporation's capital stock above the value of its real estate and machinery, and in this connection see *Home Ins. Co.* v. *New York,* 134 U. S. *supra,* where the excise was computed upon the entire capital stock measured by the extent of the dividends thereon.

We must not forget that the right to select the measure and objects of taxation devolves upon the Congress and not upon the courts, and such selections are valid unless constitutional limitations are overstepped. "It is no part of the function of a court to inquire into the reasonableness of the excise, either as respects the amount or the property upon which it is imposed." *Patton* v. *Brady,* 184 U. S. 608; *McCray* v. *United States,* 195 U. S. 27, 58, and previous cases in this court there cited.

Nor is that line of cases applicable, such as *Brown* v. *Maryland,* 12 Wheat. 419, holding that a tax on the sales of an importer is a tax on the import, and *Cook* v. *Pennsylvania,* 97 U. S. 566, holding a tax on auctioneer's sales of goods in original packages a tax on imports. In these cases the tax was held invalid, as the State thereby taxed subjects of taxation within the exclusive power of Congress.

What we have said as to the power of Congress to lay this excise tax disposes of the contention that the act is void as lacking in due process of law.

It is urged that this power can be so exercised by Congress as to practically destroy the right of the States to create corporations, and for that reason it ought not to be sustained, and reference is made to the declaration of Chief Justice Marshall in *McCulloch* v. *Maryland* that the power to tax involves the power to destroy. This argument has not been infrequently addressed to this court with respect to the exercise of the powers of Congress. Of such contention this court said in *Knowlton* v. *Moore, supra:*

"This principle is pertinent only when there is no power to tax a particular subject, and has no relation to a case where such right exists. In other words, the power to destroy which may be the consequence of taxation is a reason why the right to tax should be confined to subjects which may be lawfully embraced therein, even although it happens that in some particular instance no great harm may be caused by the exercise of the taxing authority as to a subject which is beyond its scope. But this reasoning has no application to a lawful tax, for if it had there would be an end of all taxation; that is to say, if a lawful tax can be defeated because the power which is manifested by its imposition may when further exercised be destructive, it would follow that every lawful tax would become unlawful, and therefore no taxation whatever could be levied."

In *Veazie Bank* v. *Fenno*, 8 Wall. 533, *supra*, speaking for the court, the Chief Justice said:

"It is insisted, however, that the tax in the case before us is excessive, and so excessive as to indicate a purpose on the part of Congress to destroy the franchise of the bank, and is, therefore, beyond the constitutional power of Congress.

"The first answer to this is that the judicial cannot prescribe to the legislative department of the government limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon per-

sons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected. So if a particular tax bears heavily upon a corporation, or a class of corporations, it cannot, for that reason only, be pronounced contrary to the Constitution."

To the same effect: *McCray* v. *United States*, 195 U. S. 27. In the latter case it was said:

"   .   .   .   no instance is afforded from the foundation of the government where an act, which was within a power conferred, was declared to be repugnant to the Constitution, because it appeared to the judicial mind that the particular exertion of constitutional power was either unwise or unjust."

And in the same case this court said, after reviewing the previous cases in this court:

"Since, as pointed out in all the decisions referred to, the taxing power conferred by the Constitution knows no limits except those expressly stated in that instrument, it must follow, if a tax be within the lawful power, the exertion of that power may be not judicially restrained because of the results to arise from its exercise."

The argument, at last, comes to this: That because of possible results, a power lawfully exercised may work disastrously, therefore the courts must interfere to prevent its exercise, because of the consequences feared. No such authority has ever been invested in any court. The remedy for such wrongs, if such in fact exist, is in the ability of the people to choose their own representatives, and not in the exertion of unwarranted powers by courts of justice.

It is especially objected that certain of the corporations whose stockholders challenge the validity of the tax, are so-called real estate companies, whose business is principally the holding and management of real estate. These cases are No. 415, *Cedar Street Company* v. *Park Realty Company;* No. 431, *Percy H. Brundage* v. *Broadway Realty*

*Company;* No. 443, *Phillips* v. *Fifty Associates;* No. 446, *Mitchell* v. *Clark Iron Company;* No. 412, *William H. Miner* v. *Corn Exchange Bank;* and No. 457, *Cook* v. *Boston Wharf Company.*

In No. 412, *Miner* v. *Corn Exchange Bank,* the bank occupies a building in part and rents a large part to tenants.

Of the realty companies, the Park Realty Company was organized to "work, develop, sell, convey, mortgage or otherwise dispose of real estate; to lease, exchange, hire or otherwise acquire property; to erect, alter or improve buildings; to conduct, operate, manage or lease hotels, apartment houses, etc.; to make and carry out contracts in the manner specified concerning buildings . . . and generally to deal in, sell, lease, exchange or otherwise deal with lands, buildings and other property, real or personal," etc.

At the time the bill was filed the business of the company related to the Hotel Leonori, and the bill averred that it was engaged in no other business except the management and leasing of that hotel.

The Broadway Realty Company was formed for the purpose of owning, holding and managing real estate. It owns an office building and certain securities. The office building is let to tenants, to whom light and heat are furnished, and for whom janitor and similar service are performed.

The Fifty Associates are operating under a charter to own real estate with power to build, improve, alter, pull down and rebuild, and to manage, exchange and dispose of the same.

The Clark Iron Company was organized under the laws of Minnesota, owns and leases ore lands for the purpose of carrying on mining operations, and receives a royalty depending upon the quantity of ore mined.

The Boston Wharf Company is operating under a

charter authorizing it to acquire lands and flats, with their privileges and appurtenances, and to lease, manage and improve its property in whatever manner shall be deemed expedient by it, and to receive dockage and wharfage for vessels laid at its wharves.

What we have said as to the character of the corporation tax as an excise disposes of the contention that it is direct, and therefore requiring apportionment by the Constitution. It remains to consider whether these corporations are engaged in business. "Business" is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict., 158, citing *People* v. *Commissioners of Taxes*, 23 N. Y. 242, 244. "That which occupies the time, attention and labor of men for the purpose of a livelihood or profit." Bouvier's Law Dictionary, Vol. I, p. 273.

We think it is clear that corporations organized for the purpose of doing business, and actually engaged in such activities as leasing property, collecting rents, managing office buildings, making investments of profits, or leasing ore lands and collecting royalties, managing wharves, dividing profits, and in some cases investing the surplus, are engaged in business within the meaning of this statute, and in the capacity necessary to make such organizations subject to the law.

Of the *Motor Taximeter Cab Company Case*, No. 432, the company owns and leases taxicabs, and collects rents therefrom. We think it is also doing business within the meaning of the statute.

What we have already said disposes of the objections made in certain cases of life insurance and trust companies, and banks, as to income derived from United States, state, municipal or other non-taxable bonds.

We come to the question: Is a so-called public service corporation, such as The Coney Island and Brooklyn Railroad Company, in case No. 409, and the Interborough

Rapid Transit Company, No. 442, exempted from the operation of this statute? In the case of *South Carolina* v. *United States*, 199 U. S. 437, this court held that when a State, acting within its lawful authority, undertook to carry on the liquor business it did not withdraw the agencies of the State carrying on the traffic from the operation of the internal revenue laws of the United States. If a State may not thus withdraw from the operation of a Federal taxing law a subject-matter of such taxation, it is difficult to see how the incorporation of companies whose service, though of a public nature, is, nevertheless, with a view to private profit, can have the effect of denying the Federal right to reach such properties and activities for the purposes of revenue.

It is no part of the essential governmental functions of a State to provide means of transportation, supply artificial light, water and the like. These objects are often accomplished through the medium of private corporations, and, though the public may derive a benefit from such operations, the companies carrying on such enterprises are, nevertheless, private companies, whose business is prosecuted for private emolument and advantage. For the purpose of taxation they stand upon the same footing as other private corporations upon which special franchises have been conferred.

The true distinction is between the attempted taxation of those operations of the States essential to the execution of its governmental functions, and which the State can only do itself, and those activities which are of a private character. The former, the United States may not interfere with by taxing the agencies of the State in carrying out its purposes; the latter, although regulated by the State, and exercising delegated authority, such as the right of eminent domain, are not removed from the field of legitimate Federal taxation.

Applying this principle, we are of opinion that the so-

called public service corporations, represented in the cases at bar, are not exempt from the tax in question. *Railroad Co.* v. *Peniston,* 18 Wall. 5, 33.

It is again objected that incomes under $5,000 are exempted from the tax. It is only necessary, in this connection, to refer to *Knowlton* v. *Moore,* 178 U. S. *supra,* in which a tax upon inheritances in excess of $10,000 was sustained. In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293, a graded inheritance tax was sustained.

As to the objections that certain organizations, labor, agricultural and horticultural, fraternal and benevolent societies, loan and building associations, and those for religious, charitable or educational purposes, are excepted from the operation of the law, we find nothing in them to invalidate the tax. As we have had frequent occasion to say, the decisions of this court from an early date to the present time have emphasized the right of Congress to select the objects of excise taxation, and within this power to tax some and leave others untaxed, must be included the right to make exemptions such as are found in this act.

Again, it is urged that Congress exceeded its power in permitting a deduction to be made of interest payments only in case of interest paid by banks and trust companies on deposits, and interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of the corporation or company. This provision may have been inserted with a view to prevent corporations from issuing a large amount of bonds in excess of the paid-up capital stock, and thereby distributing profits so as to avoid the tax. In any event, we see no reason why this method of ascertaining the deductions allowed should invalidate the act. Such details are not wholly arbitrary, and were deemed essential to practical operation. Courts cannot substitute their judg-

ment for that of the legislature. In such matters a wide range of discretion is allowed.

The argument that different corporations are so differently circumstanced in different States, and the operation of the law so unequal as to destroy it, is so fully met in the opinion in *Knowlton* v. *Moore*, 178 U. S. 41, *supra*, that it is only necessary to make reference thereto. For this purpose the law operates uniformly, geographically considered, throughout the United States, and in the same way wherever the subject-matter is found. A liquor tax is not rendered unlawful as a revenue measure because it may yield nothing in those States which have prohibited the liquor traffic. No more is the present law unconstitutional because of inequality of operation owing to different local conditions.

Nor is the special objection tenable, made in some of the cases, that the corporations act as trustees, guardians, etc., under the authority of the laws or courts of the State. Such trustees are not the agents of the state government in a sense which exempts them from taxation because executing the necessary governmental powers of the State. The trustees receive their compensation from the interests served, and not from the public revenues of the State.

It is urged in a number of the cases that in a certain feature of the statute there is a violation of the Fourth Amendment of the Constitution, protecting against unreasonable searches and seizures. This Amendment was adopted to protect against abuses in judicial procedure under the guise of law, which invade the privacy of persons in their homes, papers and effects, and applies to criminal prosecutions and suits for penalties and forfeitures under the revenue laws. *Boyd* v. *United States*, 116 U. S. 632. It does not prevent the issue of search warrants for the seizure of gambling paraphernalia and other illegal matter. *Adams* v. *New York*, 192 U. S. 585. It does not prevent the issuing of process to require at-

tendance and testimony of witnesses, the production of books and papers, etc. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447; *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25. Certainly the Amendment was not intended to prevent the ordinary procedure in use in many, perhaps most, of the States of requiring tax returns to be made, often under oath. The objection in this connection applies, when the substance of the argument is reached, to the sixth section of the act, which provides:

"Sixth. When the assessment shall be made, as provided in this section, the returns, together with any corrections thereof which may have been made by the commissioner, shall be filed in the office of the Commissioner of Internal Revenue and shall constitute public records and be open to inspection as such. "

An amendment was made June 17, 1910, which reads as follows:

"For classifying, indexing, exhibiting and properly caring for the returns of all corporations, required by section thirty-eight of an act entitled 'An act to provide revenue, equalize duties, encourage the industries of the United States, and for other purposes,' approved August fifth, nineteen hundred and nine, including the employment in the District of Columbia, of such clerical and other personal services and for rent of such quarters as may be necessary, twenty-five thousand dollars: *Provided,* That any and all such returns shall be open to inspection only upon the order of the President under rules and regulations to be prescribed by the Secretary of the Treasury and approved by the President."

The contention is that the above section as originally framed and as now amended could have no legitimate connection with the collection of the tax, and in substance amounts to no more than an unlawful attempt to exhibit the private affairs of corporations to public or private inspection, without any substantial connection with or

legitimate purpose to be subserved in the collection of the tax under the act now under consideration. But we cannot agree to this contention. The taxation being, as we have held, within the legitimate powers of Congress, it is for that body to determine what means are appropriate and adapted to the purposes of making the law effectual. In this connection the often quoted declaration of Chief Justice Marshall in *McCulloch* v. *Maryland*, 4 Wheat. 316, 421, is appropriate: "Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, and which are plainly adapted to that end, and which are not prohibited, but are consistent with the letter and spirit of the Constitution, are constitutional."

Congress may have deemed the public inspection of such returns a means of more properly securing the fullness and accuracy thereof. In many of the States laws are to be found making tax returns public documents, and open to inspection.[1]

---

[1] In Connecticut, the requirement is that the tax lists of the assessors shall be abstracted and lodged in the town clerk's office "for public inspection." R. S. Conn., 1902, § 2310. In New York, notices of the completion of the assessment rolls must be conspicuously posted in three or more public places, and a copy left in a specified place, "where it may be seen and examined by any person until the third Tuesday of August next following." Consol. Laws of N. Y., vol. 5, p. 5859; Laws N. Y., 1909, c. 62, § 36. In Maryland, a record of property assessed is required to be kept, and the valuation thereof with alphabetical list of owners recorded in a book, "which any person may inspect without fee or reward." Pub. Laws Md., vol. 2, p. 1804, § 23. In Pennsylvania, it is provided that from the time of publishing the assessor's returns until the day appointed for finally determining whether the assessor's valuations are too low, "any taxable inhabitant of the county shall have the right to examine the said return in the commissioner's office." Pepper & Lewis' Dig. Laws Pa., vol. 2, p. 4591, § 357. In New Hampshire, the list of taxes assessed are required to be kept in a book, and also left with the town clerk, and such records "shall be open to the inspection of all persons." Pub. Stat. N. H., 1901, p. 214, § 5.

We cannot say that this feature of the law does violence to the constitutional protection of the Fourth Amendment, and, this is equally true of the Fifth Amendment, protecting persons against compulsory self-incriminating testimony. No question under the latter Amendment properly arises in these cases, and when circumstances are presented which invoke the protection of that Amendment and raise questions involving rights thereby secured it will be time enough to decide them. And so of the argument that the penalties for the non-payment of the taxes are so high as to violate the Constitution. No case is presented involving that question, and, moreover, the penalties are clearly a separate part of the act, and whether collectible or not may be determined in a case involving an attempt to enforce them. *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 53.

It has been suggested that there is a lack of power to tax foreign corporations, doing local business in a State, in the manner proposed in this act, and that the tax upon such corporations, being unconstitutional, works such inequality against domestic corporations as to invalidate the law. It is sufficient to say of this that no such case is presented in the record. *Southern Railway Co.* v. *King*, 217 U. S. 525. This is equally true as to the alleged invalidity of the act as a tax on exports, which is beyond the power of Congress. No such case is presented in those now before the court.

We have noticed such objections as are made to the constitutionality of this law as it is deemed necessary to consider. Finding the statute to be within the constitutional power of the Congress, it follows that the judgments in the several cases must be affirmed.

*Affirmed.*