## GREGG v. UNITED STATES.
### No. 8820.

District Court, W. D. Pennsylvania.
Feb. 23, 1938.

John A. McCann, of Pittsburgh, Pa., for plaintiff.

Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa.

McVICAR, District Judge.

The question for determination is whether the salary of plaintiff from 1925 to 1935, inclusive, as general manager of cafeterias in the public schools of the School District of the City of Pittsburgh, is taxable income under the federal income tax laws.

Cafeterias in city public high schools of the country at the present time and during a number of years in the past are in general use. Cafeterias were established and maintained in the public schools of the city of Philadelphia prior to 1911. The first cafeteria in the School District of the City of Pittsburgh was established in the year 1911 or 1912. Cafeterias since that time have been increased so that there are cafeterias in all of the high schools in Pittsburgh, and also in some other of its schools. The number of students in the high schools in Pittsburgh is approximately 40,000. Some of these high schools have an enrollment of approximately 3,000 students. Some of the students travel a considerable distance, as they reside a mile or more from the school. Each high school has a manager of its cafeteria. Plaintiff is general manager of all the cafeterias. The School District pays the original cost of equipping the cafeterias in its schools. It purchases the food and prepares the same for service to the student body. The diet prepared is a well-balanced one. The prices charged are made so as to cover the cost to the School District, which includes the salaries of the managers and the general manager. The School District furnishes free, light, water, heat, janitor service, and use of its buildings. The finances of the cafeteria system are in control of the School District. The lunch period, fixed by rule, is thirty minutes, which is staggered as to time.

The cafeteria service is of physical, moral, and educational benefit or advantage to the student body. It is an advantage physically, in that the students have a well-balanced diet, a sufficient time to eat lunch, and affords protection against the procuring of lunches in the neighborhood of the high schools where the food might not be of a proper character. The service is a moral advantage, in that it keeps the students within the school grounds and away from places where intoxicating liquors are sold, and also from other objectionable places. It is an educational value in that the students have the opportunity of observing a well-balanced diet for lunches; it assists not only as to the food supply but as to the time for eating lunches and otherwise, in keeping the students in mental condition for their work. A modern public high school in a city cannot be administered efficiently without a cafeteria.

The Commissioner of Internal Revenue assessed the income of the plaintiff as general manager of the cafeterias in the Pittsburgh schools for the years 1925 to 1935, inclusive, which, with interest, amounts to $648.52. This amount she paid under protest and made a claim for refund which was refused. She then brought the action in this case. It is the contention of the plaintiff that this income is exempt from taxation under the federal income tax laws. Defendant contends that it is taxable. In Brush v. Commissioner, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428, the question for the court's determination was whether the salary of the chief engineer of the Bureau of Water Supply of the City of New York was taxable income under the federal income tax laws. In the opinion of the court, written by Justice Sutherland, it is stated (300 U.S. page 360, 57 S.Ct. 495): "The answer depends upon whether the water system of the city was created and is conducted in the exercise of the city's governmental functions. If so, its operations are immune from federal taxation and, as a necessary corollary, 'fixed salaries and compensation paid to its officers and employees in their capacity as such are likewise immune.' New York ex rel. Rogers v. Graves, 299 U.S. 401, 408, 57 S.Ct. 269, 81 L.Ed. 306."

The conclusion of the court was (300 U. S. page 370, 57 S.Ct. 495, 500): "That the acquisition and distribution of a supply of water for the needs of the modern city involve the exercise of essential governmental functions."

In the opinion it is stated (300 U.S. page 364, 57 S.Ct. 495, 497): "A federal tax in respect of the activities of a state or a state agency is an imposition by one government upon the activities of another, and must accord with the implied federal requirement that state and local governmental functions be not burdened thereby."

The court further stated (300 U.S. page 362, 57 S.Ct. 495, 496): "In the present case, upon the one side stress is put upon the adjective 'essential', as used in the Flint v. Stone Tracy Case [220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312], while, on the other side, it is contended that this qualifying adjective must be put aside in favor of what is thought to be the greater reach of the word 'usual,' as employed in the Powers Case, [Helvering v. Powers, 293 U.S. 214, 55 S.Ct. 171, 79 L.Ed. 291].

But these differences in phraseology, and the others just referred to, must not be too literally contradistinguished. In neither of the cases cited was the adjective used as an exclusive or rigid delimitation. For present purposes, however, we shall inquire whether the activity here in question constitutes an essential governmental function within the proper meaning of that term; and in that view decide the case."

The court further stated (300 U.S. pages 372, 373, 57 S.Ct. 495, 501): "And to say that, because the city makes a charge for furnishing water to private consumers, it follows that the operation of the water works is corporate and not governmental, is to beg the question. What the city is engaged in doing in that respect is rather rendering a service than selling a commodity. If that service be governmental, it does not become private because a charge is made for it, or a profit realized. * * * The state or the city may exact a tuition charge for instruction in the public schools."

The court further stated (300 U.S. page 371, 57 S.Ct. 495, 500):

"It may be, as it is suggested, that private corporations would be able and willing to undertake to provide a supply of water for all purposes; but if the state and city of New York be of opinion, as they evidently are, that the service should not be intrusted to private hands, but should be rendered by the city itself as an appropriate means of discharging its duty to protect the health, safety, and lives of its inhabitants, we do not doubt that it may do so in the exercise of its essential governmental functions. * * *

"Governmental functions are not to be regarded as nonexistent because they are held in abeyance, or because they lie dormant, for a time. If they be by their nature governmental, they are none the less so because the use of them has had a recent beginning."

The reasoning of the Brush Case is applicable to the present case. The education of the children of a state is an essential governmental function. The furnishing of cafeterias which promotes the physical, moral, and educational welfare of the student body is an essential part thereof. This was the judgment of the Commonwealth of Pennsylvania and the School District of the City of Pittsburgh.

Hoskins et ux. v. Commissioner, 5 Cir., 84 F.2d 627, 628, is a case in which the facts and the questions involved are substantially the same as in this case. Mrs. Hoskins was superintendent of cafeterias for the Fort Worth Public Schools. The Commissioner assessed the income received by her from said office. The court, in an opinion by Foster, C. J., stated:

"It may not now be disputed that it is the duty of a state to provide means for the education of the children of the state and in doing so the state is performing a governmental function. * * *

"Undoubtedly Mrs. Hoskins was an employee of the school district and not an independent contractor. It was within the discretion of the school board to determine what was essential in the operation of the schools. The cafeteria system as operated by the school board could not reasonably be considered a private enterprise, equivalent to a public cafeteria operated for profit. That its receipts were kept separate did not make it a separate entity and was no more than a matter of bookkeeping, for convenience in determining whether it showed a loss or broke even as intended. The cafeterias no doubt tended to improve the health of the pupils. Surely this was a result within the province of the school board to accomplish. Perhaps the introduction of a balanced meal gave some instruction in dietetics. To that extent, at least, it was educational.

"We consider that the operation of the cafeteria system was a proper exercise of a governmental function by the school district and that Mrs. Hoskins is a public employee of a political subdivision of the state of Texas engaged in performing governmental functions."

■ I conclude that the salary of plaintiff, as general manager of cafeterias in the public schools of the City of Pittsburgh from 1925 to 1935, inclusive, was not taxable income under the federal income tax laws.

■ Defendant contends that the School District of the City of Pittsburgh was without power to establish and operate cafeterias in its public high schools prior to May 19, 1931; that there was no legislative authority therefor. As stated above, cafeterias had been established and maintained in the Pittsburgh High Schools since 1911 or 1912; in the City of Philadelphia prior to that date. There is no evidence that their power to do so had ever been questioned. The School District of the City of Pittsburgh had been given power prior to May

19, 1931, and as early, at least, as 1911, to establish, equip, furnish, and maintain elementary public schools, high schools, etc. This power was broad enough to include the establishing, equipping, and maintaining of cafeterias in the public high schools—cafeterias being essential to the physical, moral, and educational welfare of the students attending such schools.

Let an order for judgment be prepared in accordance with the findings of fact, conclusions of law, and this opinion.