**PYNE et al. v. UNITED STATES.**

No. 44007.

Court of Claims.

Oct. 7, 1940.

Allen G. Gartner, of Washington, D. C., for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D.C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and GREEN, Judges.

WHITAKER, Judge.

This case involves the right of the estate of Percy R. Pyne, deceased, in computing its income tax, to deduct attorney's fees and attorney's expenses from the gross income of the estate.

Supplement E of Title I of the Revenue Act of 1934, 48 Stat. 680, 727, 26

U.S.C.A. Int.Rev.Code, § 161 et seq., provides for the taxation of the income of estates and trusts. Section 161 (a) under that supplement, 26 U.S.C.A. Int.Rev.Code, § 161 (a), provides: "The taxes imposed by this title [chapter] upon individuals shall apply to the income of estates or of any kind of property held in trust, * * *."

And Section 162, 26 U.S.C.A. Int.Rev. Code, § 162, provides: "The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, * * *" with certain exceptions not material here. Section 23 specifies the deductions from gross income allowable to an individual and, therefore, to an estate. Subsection (a), 26 U.S.C.A. Int.Rev.Code, § 23(a), permits the deduction of—"* * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

Attorney's fees are, of course, ordinary and necessary expenses in carrying on a trade or business, and these attorney's fees are, therefore, deductible if the estate was engaged in carrying on a trade or business, and the attorney's fees were incurred in doing so.

■ The word "business," in the sense the word is used in the Revenue Act, is defined by Webster as—"That which busies, or engages time, attention, or labor, as a principal serious concern or interest. Specif. a Constant employment; regular occupation; work; * * * b any particular occupation or employment habitually engaged in, esp. for livelihood or gain."

And the Supreme Court in one of the early tax decisions under the Corporation Excise Tax Law of 1909 defined business as "'that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' 1 Bouv. Law Dict. p. 273." Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas. 1912B, 1312. Equally is it true that whatever engages the time, attention, and labor of men in order to conserve what they have or to avoid loss is likewise a business.

In Deputy, Administratrix, et al. v. Du Pont, 308 U.S. 488, 492, 60 S.Ct. 363, 366, 84 L.Ed. 416, certain expenses had been incurred by the respondent which he sought to deduct as ordinary and necessary expenses paid in carrying on his trade or business, which in that case he insisted was that of preserving his investment in the E. I. du Pont de Nemours and Company. The majority opinion stated:

"The district court concluded, on the basis of respondent's large and diversified investment holdings and his wide financial and business interests, that his business was primarily that of conserving and enhancing his estate. The petitioners challenge that conclusion, asserting that respondent's activities in connection with conserving and enhancing his estate did not constitute a 'trade or business' within the meaning of § 23 (a) of the Act.

"But as we view the case it is unnecessary for us to pass on that contention and to make the delicate dissection of administrative practice which that would entail. * * *"

In a concurring opinion Mr. Justice Frankfurter, with whom Mr. Justice Reed concurred, pointed out that the decision of the majority of the court was based on the hypothesis that "this taxpayer's activities, for which expenses were sought to be deducted, did constitute a 'trade or business.'" And Mr. Justice Roberts, with whom Mr. Justice McReynolds concurred, in a dissenting opinion expressed the view that the taxpayer's activities did constitute a trade or business and that the expenditures therein were deductible as ordinary and necessary in the carrying on of it. See the opinion of the majority and Judge Maris' concurring opinion in Du Pont v. Deputy et al., 3 Cir., 103 F.2d 257.

In the case of Kales v. Commissioner of Internal Revenue, 101 F.2d 35, 39, 122 A.L.R. 211, there is an extensive discussion of when an investor, who has no other business, is or is not to be said to be engaged in the investment business. Toward the conclusion of this discussion the court quotes with approval a letter from the Bureau of Internal Revenue to the Committee of Banking Institutions on Taxation in which the Bureau said: "* * * You are advised that the Bureau has recently adopted the policy of allowing as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year with respect to the management, protection and handling of properties producing taxable income."

We think this is sound policy. As the court in that case pointed out, this policy is in accord with decisions of some of the Circuit Courts of Appeal and also of the Board of Tax Appeals.

Percy R. Pyne died in 1929 leaving an estate of some thirty-five million dollars. After making certain specific bequests, he left the residue of his estate in trust to his sons and daughter as trustees, who were also his executors. The estate was not fully administered until 1935. The attorney's fees in question were paid in 1934. They amount to $40,000, and the attorney's expenses amount to $155.60. In that year the estate had a gross income of $154,966.23.

The executors were given power in the administration of the estate to an extent almost equal to that the decedent had during his lifetime. They were given authority to retain the deceased's investments or to sell any part of them and to invest and reinvest the proceeds in any sort of property which appeared to them advisable, whether or not, of the class authorized by the laws of the State of New York or the State of New Jersey. They were authorized to participate in the reorganization of any corporations in which the decedent might hold stocks or securities, or in which any part of the decedent's estate might later be invested, and in such connection to take any action which they might see fit to take.

The decedent died shortly before the stock market crash of 1929 and the subsequent depression. At the time of his death he had over 160,000 shares of stock in 129 different companies, and he held 118 different issues of bonds of a total par value of over $5,000,000. In order to look after the affairs of the estate the executors maintained an office and employed a manager and six or seven other employees. A very large part of decedent's estate was invested in the stock of the National City Bank, which at the time of his death was selling at $440 a share, but which by 1934 had declined in value to fifteen or twenty dollars a share. The value of these and other investments of the estate so greatly declined before the estate was fully administered that, his attorney testified, "it looked like the estate was almost going to be wiped out."

The Woodward Iron Company, in which the estate had an investment of about $2,000,000, went into the hands of a receiver. The executors and their attorney busied themselves to save from the wreck what they could by the organization of a committee of bondholders and stockholders for the purpose of taking over the property.

During 1934 the executors sold their holdings in some 200 companies.

It is difficult to imagine a situation that would have more completely engaged the time and attention of the executors. This is especially so since they were people of limited business experience. They were the three sons and the daughter of deceased. The daughter had had no business experience. One of the sons was a professor of chemistry at Columbia University. Another one had been an embryo archaeologist and had also been in the army. Only one of them had had any practical business experience and his had not been of a sort to enable him to cope with the herculean task of conserving this $35,000,000 estate in these cataclysmic times.

The attorney's services consisted chiefly in advising the executors on steps to be taken which would best conserve the estate, as to what investments to dispose of, and in what other property to invest the proceeds, in advising the management of the corporations in which the estate had investments as to the steps to be taken to conserve their property and escape loss. In doing so, certainly this attorney was engaged in business, and we have no doubt the executors were likewise engaged in business, in the business of conserving the estate and protecting its income.

The Commissioner has found that all but $2,000 of the $40,000 paid the attorney was paid for such services. We are not disposed to disturb this finding. It results that the plaintiffs are entitled to deduct the sum of $38,155.60. This results in an overpayment of tax in the sum of $16,542.80, for which the plaintiffs are entitled to judgment, with interest as provided by law. It is so ordered.