*In re* DISSOLUTION OF EMERY MANAGEMENT CORP.

UNITED STATES *v.* LANTERMAN.

1. INTERNAL REVENUE—TAX ON INCOME FROM PROPERTY—OWNER-
SHIP.
   Where income is derived from property, the basic test for deter-
   mining who is to bear the income tax is that of ownership.

2. SAME—CORPORATION AS AGENT OF HEIRS—INCOME FROM PROPERTY.
   Corporation to which was transferred a large number of parcels
   of real estate by the 10 heirs of the former owner, now de-
   ceased, all of whom lived outside of the State and were scat-
   tered all over the United States, sole purpose of existence for
   which was the liquidation of the estate, execution of convey-
   ances and distribution of income and avails, which had no em-
   ployees or pay roll and in effect was the alter ego of such heirs,
   acted as their agent and had no property or income of its
   own, was not subject to the Federal income tax on income it
   received from the properties where such income, together with
   the proceeds of sales was distributed to the heirs according to
   their interest and income tax was sometimes paid by them for
   their respective shares even before distribution.

3. SAME—CORPORATIONS—CAPITAL STOCK—DOING BUSINESS.
   A corporation whose activities are reduced to the owning and
   holding of property and the distribution of its avails and the
   doing of only acts necessary to continue that status is not
   subject to the capital stock tax as it is not "doing business"
   within the meaning of the capital stock tax act.

REFERENCES FOR POINTS IN HEADNOTES

[2] 27 Am. Jur., Income Taxes, § 175.
[2] Tax on corporation as affected by fact that corporation is not
    actually engaged in or carrying on business for which it was
    incorporated.  124 A.L.R. 1109.
[3] 51 Am. Jur., Taxation, § 796.
[4] 14 Am. Jur., Costs, § 33.

4. COSTS—CORPORATIONS—CAPITAL STOCK TAXES—INCOME TAXES—
   APPEAL BY UNITED STATES.

   No costs are allowed on appeal by the United States in its pro-
   ceeding to recover capital stock and income taxes from corpora-
   tion which had legal title to, but no beneficial interest in, real
   estate held by it in an agency or trust relation to 10 widely
   scattered nonresident heirs of former owner, now deceased.

Appeal from Wayne; Ferguson (Frank B.), J.
Submitted April 7, 1948. (Docket No. 21, Calendar
No. 43,951.) Decided June 29, 1948.

In the matter of the dissolution of Emery Manage-
ment Corporation. The United States of America
filed its claim for taxes. Claim denied. Plaintiff
appeals. Affirmed.

*Theron Lamar Caudle,* Assistant Attorney Gen-
eral, *Helen R. Carloss, Robert N. Anderson, Eliza-
beth B. Davis* and *Homer R. Miller,* Special Assist-
ants to the Attorney General, *Thomas P. Thornton,*
United States Attorney, and *Roger P. O'Connor,* As-
sistant United States Attorney, for plaintiff.

*Edward S. Reid, Jr., Lawrence S. King* and *Miller,
Canfield, Paddock & Stone,* for defendant.

DETHMERS, J. The question presented is whether
the Emery Management Corporation is subject to a
capital stock tax and to an income tax on the income
from real estate to which it held legal title. The trial
court held that such income was not the income of
the corporation, that it had no beneficial interest
therein and that, in holding title and acting in rela-
tion to the properties, it acted as a mere nominee or
agent of the heirs of Willard P. Emery, deceased.
From an order disallowing the tax claims, claimant
appeals.

Willard P. Emery died leaving a large number of parcels of real estate in the city of Detroit to his heirs, all of whom resided outside of Michigan. Due to the existing depression the properties, returned to the estate in foreclosures and encumbered with mortgages and taxes, could not immediately be liquidated and, in consequence, required renting to produce income to carry them and resell them when market conditions warranted. Leases, contracts, mortgages for refinancing and deeds, when sales were made, required the signatures of all the heirs, about 10 in number, scattered all over the United States. This occasioned considerable inconvenience, to avoid which the corporation was formed and the heirs conveyed all the parcels of real estate to it, as a convenient title holder, to facilitate the execution of leases, mortgages and deeds during the process of liquidating the assets derived from the estate. Although the value of the properties thus held by the corporation was substantial, it had but a nominal capital stock of $1,000, none of which was ever paid in. All the stock (100 shares, $10 par value) was issued to Leslie T. Jones, who had been Emery's attorney and who continued to act as such for the estate and the corporation, but who had no interest in the estate. Stock was never issued nor assigned to the heirs and no dividends were ever paid thereon. The corporation had no employees and no pay roll. It was run by Jones and one of the heirs. Its officers and directors were dummies, office employees of the attorney, Jones, and their only function in connection with the corporation was the execution of conveyances. Jones was paid only for legal services rendered as an attorney. The corporation employed a management company for the purpose of managing the properties. The heirs were consulted as to sales and leases and it was they rather than the directors of the corporation who determined what

would happen to the property and who exercised control thereover. Liquidation was the sole aim and no new properties were acquired by the corporation. Rentals were temporary and properties were sold as rapidly as possible. The heirs received, from time to time, not only their respective shares of income but also of the proceeds from sales of properties. At no time was income or proceeds from sales reinvested or retained by the corporation as its own. The corporation served as a holder of title, to execute conveyances and to distribute the avails from the properties. The individual heirs reported and paid taxes on their respective shares of the income from the properties, regardless of whether distribution thereof had as yet been made to them by the corporation. Upon the death of one of the heirs, his share in the properties was listed as real estate in his estate and estate taxes paid thereon. The corporation accounts were kept as agency, trust or estate accounts, showing net income as estate income distributable to the heirs in their respective proportions. The properties were not carried as assets or liabilities on the corporate books which contain no corporate profit and loss statement or balance sheet. A franchise tax was paid on the nominal capital only and no intangible tax was paid on the land contracts by the corporation. It filed income tax returns each year showing no income and no properties in the balance sheets which are parts of such returns.

The government relies upon *Moline Properties, Inc.,* v. *Commissioner of Internal Revenue,* 319 U. S. 436 (63 Sup. Ct. 1132, 87 L. Ed. 1499). In that case the supreme court of the United States held that gains from sales by the corporation of its property was income taxable to the corporation and not income taxable to the individual stockholder who was the sole owner of the corporation. The holding was

predicated on a finding that, on the facts presented, the corporation was not the alter ego of its sole owner, that his exercise of control over the corporation was negligible inasmuch as he had transferred all but the qualifying shares of stock not held by him to a voting trustee appointed by his creditor, and that the usual incidents of an agency relationship were lacking. In the instant case, however, the heirs did exercise control and determined the leases or sales to be made. The officers and stockholders of the corporation exercised no control beyond that of an agent over the properties to which it held legal title. The corporation's chief corporate function in relation thereto was to act as agent of the heirs in the execution of conveyances and the collection and distribution to them of the avails. Here the corporation was the alter ego of the heirs and the incidents of an agency relationship were present. The income and proceeds from sales of property belonged to and were treated as the property of the heirs. No one ever claimed or acted on the theory that Jones, the sole stockholder, was the owner of the properties or had any beneficial interest therein.

In point is the case of *Worth Steamship Corp.* v. *Commissioner of Internal Revenue,* 7 T. C. 654. In that case three men, as joint venturers, owned a steamship but permitted title thereto to be transferred, under a declaration of trust, to a corporation of which but two of the joint venturers were the sole stockholders. The corporation operated the vessel under an operating agreement by the terms of which the corporation received a fixed fee for its services and the net profits from the operation were distributed to the three joint venturers in proportion to their respective interests in the ship and not according to their respective holdings in the corporation. The court considered the decision in the *Moline Case, supra,* held it inapplicable, and said, "Where income

is derived from property, the basic test for determining who is to bear the tax is that of ownership." Applying that test the court was unable to conclude that the corporation was the owner of the income from the vessel. The court stressed the fact that the profits were distributed to the three joint venturers on the basis of their respective interests in the ship and not to the two joint venturers who were the sole stockholders of the corporation on the basis of their holdings therein. In the case at bar ownership of the corporate stock appears to have meant nothing in relation to ownership of the properties or to the right to share in the income therefrom. Such income was distributed to the heirs in proportion to their respective interests in the estate. They at all times treated the properties and avails therefrom as their own. Their actions and the manner in which the properties were handled and the corporation operated are as persuasive of the relationship between the heirs and the corporation as if there had been a written declaration of trust or agency agreement. Had such written instruments been executed, as relied upon in the *Worth Case,* it is difficult to conceive in what respect the corporation could have been made any less the owner of the beneficial interest in the properties or income therefrom or any more the trustee or agent of the heirs. It follows that the income in question is not taxable to the corporation.

A capital stock tax is imposed by the revenue act of 1935, as amended, with respect to "doing business." In determining the meaning of that term in the corporation tax act of 1909, 36 Stat. at L. 11, 112, the court in *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 171 (31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312), defined "business" as "that which occupies the time, attention and labor of men for the purpose of a livelihood or profit." In considering that same

tax act, the court, in *Von Baumbach, Collector of Internal Revenue*, v. *Sargent Land Co.*, 242 U. S. 503 (37 Sup. Ct. 201, 61 L. Ed. 460), emphasized the distinction·"between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes." The former type of corporation was held not subject to that tax in *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187 (31 Sup. Ct. 361, 55 L. Ed. 428) ; *McCoach, Collector of Internal Revenue*, v. *Railroad Co.*, 228 U. S. 295 (33 Sup. Ct. 419, 57 L. Ed. 842) ; *United States* v. *Emery, Bird, Thayer Realty Co.*, 237 U. S. 28 (35 Sup. Ct. 499, 59 L. Ed. 825). The same distinction was approved in *United States* v. *Peabody Co.* (C. C. A.), 104 Fed. (2d) 267, in passing on what constitutes "doing business" so as to incur liability under statute imposing excise tax on capital stock (Revenue Act 1934, § 701[a], [c] [3], 48 Stat. at L. 769 [26 USCA, Int. Rev. Acts, pp. 787, 788]). Applying that distinction here, it must be held that the corporation was not "doing business" within the meaning of the act in question and is, therefore, not subject to a capital stock tax.

The order disallowing the claims of the United States for income and capital stock taxes is affirmed, without costs.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.